[No. G006980. Fourth Dist., Div. Three. Oct. 30, 1989.]

GORDON J. CERESINO, Plaintiff and Appellant, v.
FIRE INSURANCE EXCHANGE et al., Defendants and
Respondents.

COUNSEL

Walter Greene, Jr., for Plaintiff and Appellant.

Waldman, Bass, Stodel & Graham, Bruce N. Graham and Stewart A. Sutton for Defendants and Respondents.

OPINION

**SONENSHINE, J.**—Gordon J. Ceresino appeals a judgment entered against him and in favor of Fire Insurance Exchange and Farmers Insurance Group (collectively Farmers). The parties stipulated to the judgment to allow review of two pretrial rulings. Ceresino objects to the court's determination he is collaterally estopped from contending Farmers should indemnify him for a prior stipulated liability judgment in favor of David McCulloch. He also insists Farmers may not raise an "advice of counsel" defense, while refusing to produce documents pursuant to the attorney/client privilege.

I

In August 1982 at the Red Onion Restaurant, Ceresino became entangled with David McCulloch over the affections of a young lady. When she

adjourned to the ladies' room, Ceresino followed her—and McCulloch followed him. Ceresino was either "grabbed at" or "shoved from behind." The result was the same; he fell down a flight of stairs.

Apparently, each combatant was restrained by a bouncer. Ceresino managed an escape and punched McCulloch. McCulloch was escorted outside while Ceresino was questioned by restaurant employees, eventually unceremoniously following in McCulloch's footsteps.

Once outside, the melee continued, allegedly at the insistence of Ceresino and against the wishes of a bloodied and soon bowed McCulloch. Ceresino insists McCulloch motioned him over and he approached just to "see what was going on." Nonetheless, by his own admission he landed six punches on McCulloch, the first three warded off by McCulloch, the last three without response when McCulloch was attempting to rise from the ground. McCulloch suffered a broken nose, fractured jaw and other injuries at the hands of Ceresino.

In September, McCulloch filed a complaint against Ceresino for assault and battery. An amended complaint added a cause of action for negligent infliction of the same injuries. Ceresino sought coverage under two policies, one issued by Commercial Union and the other by Farmers. The latter had a clause indicating the policy was secondary only; the former did not. The Farmers policy also excluded coverage for any intentionally inflicted injury. Commercial Union accepted the defense; Farmers refused to contribute to Commercial Union's legal costs. In addition to the attorney provided by Commercial Union, Ceresino hired his own "Cumis" counsel. (*San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 361 [208 Cal.Rptr. 494, 50 A.L.R.4th 913].)

In December 1983, Farmers filed a complaint for declaratory relief, naming Ceresino, McCulloch, and Commercial Union. It acknowledged a policy covering Ceresino, but specifically cited the section exempting intentional acts by the insured.

A stipulation for entry of judgment in the McCulloch/Ceresino action, filed December 10, 1984, "compromised and settled" any claims by McCulloch against Ceresino. The $300,000 judgment was based on the first cause of action for negligence. Of that amount, $100,000 represented the Commercial Union policy limits, in exchange for which Commercial Union was released for all legal purposes. McCulloch specifically dismissed with prejudice his second cause of action for assault and battery and any claim for punitive damages. McCulloch agreed to execute on the balance of the judgment solely against Farmers.

In March 1985, Farmers moved to set aside the stipulated judgment. It requested the right to enter the action as a party and relitigate damages; it also alleged Ceresino's activities were not covered by the policy because his acts were intentional and asked it be allowed to "additionally" litigate that issue. The motion was denied. Meanwhile, on January 18, 1985, McCulloch filed suit against Farmers in an attempt to recoup the balance of the stipulated judgment.

In March 1986, the court filed its memorandum of decision for the consolidated cases—McCulloch's action against Farmers to collect on the unpaid portion of his stipulated judgment; and Farmers' declaratory relief action, now naming McCulloch only, to determine whether Ceresino's actions were negligent or intentional. The court noted McCulloch had, on the first day of trial, moved for judgment on the pleadings based on the stipulated judgment, Farmers' motion to set it aside, the denial of Farmers' motion, and Farmers' failure to appeal the denial. Said the court, "There was no final judgment on the merits or comity of the interests of the parties in this and the underlying case, McCulloch vs. Ceresino; therefore, the doctrine of collateral estoppel does not apply and the issue of negligence versus intentional conduct may be litigated in the consolidated actions before this court."

The court then proceeded to examine the evidence, including the policy at issue, and the testimony, both by deposition of witnesses to the fistfight and that given orally by McCulloch and Ceresino; it took judicial notice of the stipulated liability judgment, Farmers' motion to set aside the judgment, denial of the motion and notice of ruling. The court ruled "the conduct of Gordon Ceresino did not constitute non-intentional acts of self defense, but rather constituted intentional acts of striking David McCulloch in the face six times with his right fist and beating McCulloch to the ground. Such intentional conduct by Gordon Ceresino is excluded from coverage under the policy of insurance issued by [Farmers] to Gordon Ceresino and [Farmers] has no obligation to honor or pay any portion of any stipulated judgment entered between David McCulloch and Gordon Ceresino . . . ."

Ceresino filed a complaint against Farmers for breach of contract and violation of the Insurance Code. He claimed the insurer refused to defend or indemnify him in the McCulloch/Ceresino action causing him emotional distress and economic damages. The latter were exemplified by litigation expenses and attorney fees (all covered by Commercial Union, which expects reimbursement if Ceresino is successful). He also asked for $5 million in punitive damages.

In September 1987, the court denied Ceresino's motion for summary judgment, but ruled certain issues were not to be controverted at trial. The

order acknowledged the 1982 Ceresino/McCulloch altercation, noting there was "conflicting evidence as to who threw the first punch." The Commercial Union and Farmers policies were named as "insurance policies that *possibly* afforded coverage to Ceresino for the underlying incident." (Italics added.) Legal representation for Ceresino was acknowledged in the persons of Marc Feinstein, appointed by Commercial Union, and Daniel Nordberg, retained as "Cumis" counsel by Ceresino. Also without controversy was the filed declaratory relief action, seeking a determination of whether Ceresino's acts were intentional; Commercial Union's cross-complaint; the dismissal of Commercial Union and Ceresino prior to trial; and settlement of the underlying McCulloch/Ceresino case. The terms of the settlement were related and Farmers' attempt to set it aside was noted.

In the latter part of 1988, Ceresino brought a series of motions, two of which are pertinent to this appeal. The first sought to "preclude the introduction of any evidence that the defendants relied upon 'advice of counsel.'" This request was based upon Farmers' previous refusal to produce correspondence between it and its counsel based on the attorney/client privilege. The second, and determinative, motion requested all evidence of the decision in the declaratory relief action be declared inadmissible at trial. In particular, Ceresino insisted he was not bound by that court's conclusion his acts were intentional and relieved Farmers of any duty to indemnify him. Rather, Ceresino contended Farmers was bound by the earlier stipulated judgment based on negligence.

The court denied the motions. Following a conference in chambers, the parties stipulated to entry of judgment against Ceresino, allowing an appeal from the rulings. Additionally, they agreed that in the event this court affirms the ruling on the second motion, judgment would be entered according to the stipulation.

## II

Ceresino, in his second motion, stated he did "not believe that any evidence concerning Judge Woolley's decision in the declaratory relief action and direct action filed by David McCulloch against Farmers Insurance Company is relevant to this action." He requested "the jury not be permitted to hear anything concerning [that particular] decision . . . ."

Following a hearing, the trial court found "that Judge Woolley's decision, that the Fire Insurance Exchange policy provided no coverage for any portion of the stipulated liability judgment, collaterally estopped plaintiff Ceresino from contending otherwise in the instant suit."

■ The prerequisites for collateral estoppel are "(1) a final judgment on the merits in the first action, (2) identity or privity among the parties in the first action and those against whom the estoppel is asserted, and (3) identity of the issue presented in the second action with one necessarily decided in the first." (*Allstate Ins. Co.* v. *Overton* (1984) 160 Cal.App.3d 843, 847 [206 Cal.Rptr. 823].)

■ McCulloch's appeal from the judgment in the declaratory relief action was dismissed, leaving that decision a final judgment on the merits. And the issue there presented, the unavailability of coverage under the Ceresino/Farmers policy, is central to a resolution of whether Farmers' refusal to defend was reasonable. Thus, only the issue of privity remains.

■ The definition of privity refers to "a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel [citations]." (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875 [151 Cal.Rptr. 285, 587 P.2d 1098].) "In the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication. [Citation.] Thus, in deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need for applying collateral estoppel in the particular case, in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation. [Citations.]" (*Ibid.*)

■ "A nonparty should reasonably be expected to be bound if he had in reality contested the prior action even if he did not make a formal appearance. Thus, collateral estoppel has been applied against nonparties who had a proprietary or financial interest in and control of, a prior action. [Citations.]" (*Lynch* v. *Glass* (1975) 44 Cal.App.3d 943, 949 [119 Cal.Rptr. 139].) The doctrine is also applicable where the nonparty has such an interest "in the determination of a question of fact or law with reference to the same subject matter or transaction." (*Stafford* v. *Russell* (1953) 117 Cal.App.2d 319, 320 [255 P.2d 872].)

■ There is no question Ceresino knew of the McCulloch/Farmers suit. It was a bargained-for element of his settlement in the McCulloch/Ceresino action: "Plaintiff will execute on said judgment solely by way of a direct action or first party suit against Fire Insurance Exchange . . . ."

And Ceresino retained some control over the action by forbidding McCulloch to "settle or compromise said Judgment without resolution of [the declaratory relief action] in favor of coverage under said policy for GORDON J. CERESINO, or without written authorization from GORDON J. CERESINO." Additionally, Ceresino was a witness for McCulloch and his attorney was present at the hearing. Ceresino was vitally interested in the question before the court in the McCulloch/Farmers action, i.e., whether the policy covered Ceresino's attack on McCulloch. Resolution of the coverage issue was a prerequisite to any settlement by McCulloch under the settlement agreement, *and* a vital element for any successful action by Ceresino against Farmers.

In *People* ex rel. *State of Cal.* v. *Drinkhouse* (1970) 4 Cal.App.3d 931 [84 Cal.Rptr. 773], Tax Collector Weber conveyed certain land to Rutledge and Drinkhouse; Rutledge conveyed to Harbert. Weber and Rutledge were convicted by jury of transferring land in which they had a financial interest. On a later action by the state to quiet title to the land because the contracts of sale were void from the outset, Drinkhouse and Harbert sought to evade the application of collateral estoppel. They claimed "they were neither parties to the criminal prosecution nor were they privies to the defendants. They contend that they have not had their day in court, because they had no control of the criminal prosecution. They could not produce witnesses, nor could they cross-examine witnesses produced by the People. They could not have their own counsel, nor could they appeal." (*Id.,* at p. 936.)

The same issue was decided in the prior hearing, and the resulting judgment had become final. Again, the only issue was privity. "The courts, in the interest of justice and to prevent expensive litigation, are striving to give effect to judgments by extending 'privies' beyond the classical description. [Citation.] The emphasis is not on a concept of identity of parties, but on the practical situation. The question is whether the non-party is sufficiently close to the original case to afford application of the principle of preclusion. [Citations.]" (4 Cal.App.3d at p. 937.)

In finding collateral preclusion applicable, the *Drinkhouse* court stressed that if Drinkhouse were allowed to relitigate the issue of Weber's financial interest and, for whatever reason, that fact was found to be untrue, "several anomalies unsettling to public confidence in the judicial process would appear." (4 Cal.App.3d at p. 938.) Weber would have been convicted and served a sentence for a transaction which was found to be without fault in a later civil suit; the same deed previously found void as to Rutledge, would be valid as to Drinkhouse.

If collateral preclusion is not honored here, and somehow judgment were entered for Ceresino, that judgment would be inconsistent with the

judgment entered in the declaratory relief action. The first judgment established no coverage under Ceresino's policy and therefore no duty on Farmers' part to indemnify. A subsequent judgment for Ceresino would have to be based on the opposite conclusion. This is the very situation sought to be avoided by the expanded definitions of privity. Consequently, collateral preclusion, in this instance, must be affirmed to discourage repetitive litigation, to prevent inconsistent judgments, and to discourage vexatious litigation. (*Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d 865, 875; *Columbus Line, Inc.* v. *Gray Line Sight-Seeing Companies Associated, Inc.* (1981) 120 Cal.App.3d 622, 630 [174 Cal.Rptr. 527].)

## III

■ Ceresino insists it is Farmers which is collaterally estopped because of the stipulated liability judgment. He contends the claim was potentially within the policy coverage; Farmers had notice of the underlying McCulloch/Ceresino suit and an *opportunity* to defend against it; and it is therefore bound by the stipulated liability judgment.

First, the stipulation in the third party McCulloch/Ceresino action might bind Farmers for failure to defend *if* there is coverage. But that judgment determined Ceresino's liability only, not coverage. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 279 [54 Cal.Rptr. 104 [419 P.2d 168].) Second, and most important, the parties to the stipulation clearly contemplated resolution of the coverage issue would be undertaken in the McCulloch/Farmers action. Ceresino insisted upon the following language: "[McCulloch] shall execute on said judgment solely by way of a direct action or first party suit against [Farmers under the policy] issued to [Ceresino], and will not settle or compromise said Judgment without resolution of the [declaratory relief action] *in favor of coverage under said policy for* [*Ceresino*], or without written authorization from [him]." (Italics added.) And McCulloch raised the issue of the stipulated *negligence* basis for the settlement as res judicata in his action against Farmers. Judge Woolley specifically disagreed in his memorandum of decision and that judgment is now final.

Ceresino claims he could rightfully assign his rights against Farmers to McCulloch in return for a covenant not to execute. (*Samson* v. *Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 240 [178 Cal.Rptr. 343, 636 P.2d 32].) And a judgment entered against him could be pursued by McCulloch for "'an insurer that wrongfully refuses to defend is liable on the judgment against the insured. [Citation.]' [Citation.]" (*Id.,* at p. 237.) We agree.

However, the operative word in the above citation is "wrongfully." Here, when McCulloch attempted to collect on his judgment, the court found

Farmers had no duty to indemnify Ceresino. McCulloch had no greater right to collect on the policy than did Ceresino.

Ceresino cites *Mullen* v. *Glens Falls Ins. Co.* (1977) 73 Cal.App.3d 163 [140 Cal.Rptr. 605] for the proposition he was owed a defense by Farmers as a matter of law. The *Mullen* court held the duty to defend arises whenever the insurer is apprised of any *potential* liability under the policy to avoid forcing "the insured to finance his own investigation and the defense of the lawsuit, and then to seek reimbursement in a second lawsuit against the insurance company." (*Id.,* at p. 173.) But Ceresino did not face that danger—his representation was undertaken by his other insurance company. Farmers' failure to *defend* was of no consequence except to Commercial Union, which requested Farmers pay for half of the defense. When Farmers refused and filed the declaratory relief action, Commercial Union cross-complained on this very issue.

Had Ceresino been forced to oppose the McCulloch action unrepresented, there might be some application. So, too, in *Mullen,* there were two defendants requiring representation; the second insurance company could only represent one, Glens Falls refused to defend either, and *only the unrepresented defendant had a failure to defend action* against Glens Falls. Unlike the *Mullen* defendant, Ceresino was not faced with "an undue financial burden" or deprived "of the expertise and resources available to insurance carriers in making prompt and competent investigations as to the merits of lawsuits filed against their insureds." (73 Cal.App.3d at p. 174.)

In the alternative, Ceresino states Farmers had its day in court with the motion to set aside the stipulated liability judgment; the motion was denied and Farmers failed to appeal; it could not then litigate the issue of negligent versus intentional conduct. Initially, Farmers basically asked to relitigate the damages of McCulloch, i.e., it had no opportunity to prevent the entry of judgment "for damages clearly excessive of the value of the claim" and now wished "to litigate the question of damages." As an appendage, Farmers asked to "additionally" litigate the "negligence/intentional" issue "in the present lawsuit," i.e. the McCulloch/Ceresino action. Because McCulloch and The Red Onion were not served, the court noted no prejudice to those parties by its ruling and stated "its denial on the motion rested on the merits, and not on any procedural defects for lack of proper service."

There was no reason for allowing relitigation of the damage issue. "[A] conscious decision to reject the defense of the underlying action does not justify setting aside the judgment on the basis of 'mistake, inadvertence, surprise or excusable neglect.' [Citation.]" (*Sunseri* v. *Camperos Del Valle Stables, Inc.* (1986) 185 Cal.App.3d 559, 561 [230 Cal.Rptr. 23].) And the

coverage question was already at issue in both the declaratory relief action and McCulloch's complaint against Farmers. "At that time [Farmers] will be afforded a full opportunity to demonstrate that the defendants were not covered by insurance for the underlying claim . . . ." (*Id.,* at pp. 561-562.)[1]

Judgment affirmed. Respondent to receive costs.

Wallin, J., and Scoville, P. J., concurred.

Appellant's petition for review by the Supreme Court was denied January 24, 1990.

---

[1] In light of our decision, we do not reach the "advice of counsel" issue. As noted by McCulloch's counsel, even if we agreed with his position, "There would still be no reason to reopen the case."