**MCA RECORDS, INC., Plaintiff,**

v.

**CHARLY RECORDS, LTD.; Charly Holdings, Inc.; and Charly Records International, Defendants.**

**No. CV 92–0200 RSWL (Sx).**

United States District Court, C.D. California.

Sept. 26, 1994.

Russell J. Frackman, Harvey W. Geller, Scott H. Bauman, Mitchell, Silberberg & Knupp, Los Angeles, CA, for plaintiff.

Neville L. Johnson & Associates, Los Angeles, CA, for defendants.

## ORDER

LEW, District Judge.

## I. INTRODUCTION

This case comes before the Court on Plaintiff, MCA Records' ("MCA") Motion for Summary Adjudication of Issues and Defendant, Charly Holdings' Motion for Summary Adjudication of Issue. Oral argument on the parties' motions was heard by the Court on September 12, 1994.

Now, having carefully considered the papers filed by the parties both in support of and in opposition to their respective motions, as well as arguments made orally before the Court, the Court hereby **GRANTS IN PART**

**AND DENIES IN PART** Plaintiff's Motion for Summary Adjudication and DENIES Defendant's Motion for Summary Adjudication.

## II. BACKGROUND

This case involves the ownership rights to a catalog of postwar blues and early rock & roll music known as the "Chess Catalog." MCA claims that it has exclusive rights to the music of over 25,000 artists contained in the catalog. MCA's complaint alleges that Defendant, Charly Holdings, has infringed upon its exclusive rights to the catalog. Charly Holdings has asserted numerous defenses to MCA's action, relating primarily to the bad faith and deleterious course of conduct that MCA employed to obtain its title to the Chess Masters recordings. Further, Charly Holdings has now come forward with a claim that MCA acquired its title to the recordings from a corporation which itself did not have legal title to them, and that therefore, MCA has no basis on which to assert the present claim.

MCA's present motion seeks summary adjudication on several issues relating in particular to the collateral estoppel effect of a California Superior Court case on this litigation. MCA claims that related Superior Court litigation conclusively establishes that Charly Holdings has no rights in the Chess Masters recordings at issue in this case, and further, that Charly Holdings is barred from raising any defenses to MCA's action. In addition, MCA claims that the Superior Court litigation establishes that it has exclusive rights to the Chess Masters recordings. Specifically, MCA's motion seeks summary adjudication on the following four issues: (1) That Defendant Charly Holdings has no right, title or interest in the Chess Masters recordings at issue in this case, and that MCA Records has the exclusive right, title and interest in such recordings; (2) that Defendant Charly Holdings has infringed on MCA's federal trademark over the "Chess" name, and is therefore liable to MCA Records; (3) that Charly Holdings' use of the "Chess" name constitutes a false designation of origin, and that it is therefore liable to MCA; and (4) that use by Charly Holdings of the "Chess" label constitutes unfair competition and again that it is liable to MCA.

Charly Holdings' motion seeks summary adjudication on the single issue of MCA's title to the Chess Masters recordings. Charly Holdings claims that MCA purchased its interest in the recordings from a corporation which itself had no rights in the recordings, and thus, its suit in this case is without merit since MCA itself would have no right, title, or interest in the Chess Masters recordings.

## III. DISCUSSION

### A. Standard for Summary Judgment

 Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The moving party bears the initial responsibility of identifying this absence of a genuine material issue of fact. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). However, where the non-moving party will bear the burden of proof at trial on a dispositive issue, the moving party may properly move for summary judgment based solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324, 106 S.Ct. at 2553. Thus, on issues where it will *not* have the burden of proof at trial, the moving party may meet its burden at the summary judgment stage simply by showing that there is an "absence of evidence" to support the non-moving party's case. *Id.* at 325, 106 S.Ct. at 2554. The non-moving party, on the other hand, is required by Rule 56(e) to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. Non-moving parties can meet this requirement by use of affidavits, depositions, answers to interrogatories, or admissions on file. *Id.* However, conclusory allegations unsupported by factual data are insufficient to create a triable issue of fact so as to preclude issuance of summary judgment. *Marks v. United States Dep't of Justice,* 578 F.2d 261, 263 (9th Cir.1978).

### B. Framework of the Parties' Motions

This case initially appears to present a fairly straightforward question over which party has the rightful proprietary rights in a set of musical recordings. The legal issues involved would appear to be further simplified by the fact that Charly Holdings' transferor in interest in the recordings has been conclusively adjudicated by the California Superior Court to have never had any interest whatsoever in the disputed recordings. Nonetheless, Charly Holdings has defended against MCA's suit in this case, primarily by raising a number of affirmative defenses. These defenses now include promissory estoppel based on an oral contract, unclean hands, a bona fide purchase and MCA's "criminal course of conduct" in acquiring the Chess Masters recordings, all of which Charly Holdings claims act to prevent MCA from prevailing in this case. Moreover, Charly Holdings has, in its current motion, advanced an additional defense based on what it claims is a defect in MCA's chain of title to the Chess Masters recordings.

While numerous questions of fact are raised by Charly Holdings' defenses, it appears that this case can, in large part, be resolved by determination of a single issue: Is Charly Holdings bound by the doctrine of collateral estoppel from relitigating issues conclusively determined by the California Superior Court's declaratory judgment in *MCA Records v. Marshall Sehorn*, Case No. BC 2490?

In *Sehorn*, the Superior Court (later affirmed by the California Court of Appeals and denied review by the California Supreme Court), granted judgment on MCA's complaint for declaratory relief against Marshall Sehorn and Red Dog Express, Inc. ("Sehorn/Red Dog"). Sehorn/Red Dog claimed to have had an interest in the Chess Masters recordings, an interest which it licensed for some 11.5 years to Defendant, Charly Holdings. The Superior Court's judgment, however, declared that "Sehorn and Red Dog do not now have, and never have had, any right, title or interest in and to the Chess Masters" recordings and that "with regard to Sehorn and Red Dog, MCA has the exclusive right, title and interest in and to the Chess Masters."

Judgment of Sept. 11, 1992, Ex. "B" to MCA's Request for Judicial Notice.

It is uncontested that any interest Charly Holdings may have in the Chess Masters recordings stems from a written agreement it entered into with Sehorn/Red Dog. *See* Complaint, ¶ 20; Answer, ¶ 20. Thus, the question before this Court is the preclusive effect of the Superior Court's decision in *MCA Records v. Marshall Sehorn* upon Charly Holdings' interest in the Chess Masters recordings. More specifically, the question is whether Charly Holdings is estopped from asserting any rights in the recordings due to the declaratory judgment entered against its licensor and grantor in interest. If this Court finds that Charly Holdings is bound by the judgment in the *Sehorn* case, it will be precluded from asserting any defenses to that judgment in this case. Thus, this Court will not need to inquire into the multitude of affirmative defenses that Charly Holdings has asserted. In addition, Charly Holdings' motion for summary adjudication in this case, based on its claim that MCA's chain of title is defective, will be deemed to be determined by application of the Superior Court's judgment.

### C. Superior Court Judgment as Collateral Estoppel

■ It is well settled that federal courts must respect the collateral estoppel effect of decisions by state courts. *St. John v. Wisconsin Employment Relations Bd.*, 340 U.S. 411, 71 S.Ct. 375, 95 L.Ed. 386 (1951); *Abramson v. University of Hawaii*, 594 F.2d 202, 207 (9th Cir.1979). When determining the preclusive effect of a state court's judgment, this Full Faith and Credit Statute, 28 U.S.C. § 1738, requires that this Court apply the law of the state rendering the judgment. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985). Therefore, the Court will apply the California law of collateral estoppel in determining the impact on this case of the California Superior Court's judgment in *MCA Records v. Marshall Sehorn*.

■ The doctrine of collateral estoppel, or issue preclusion, "bars a party from relitigating an *issue* identical to one he has previously litigated to a determination on its merits in another action." *Ross v. International Bhd. of Elec. Workers,* 634 F.2d 453, 457 n. 6 (9th Cir.1980). Under California law, the requirements for finding collateral estoppel include " '(1) a final judgment on the merits in the first action, (2) *identity or privity among the parties in the first action and those against whom the estoppel is asserted,* and (3) identity of the issue presented in the second action with one necessarily decided in the first.' " *Ceresino v. Fire Ins. Exch.,* 215 Cal.App.3d 814, 820, 264 Cal.Rptr. 30, 33 (1989) (quoting *Allstate Ins. Co. v. Overton,* 160 Cal.App.3d 843, 847, 206 Cal.Rptr. 823 (1984)) (emphasis added); *see also People v. Taylor,* 12 Cal.3d 686, 691, 117 Cal.Rptr. 70, 73, 527 P.2d 622, 625 (1974); *Dyson v. California State Personnel Bd.,* 213 Cal.App.3d 711, 722, 262 Cal.Rptr. 112, 118 (1989); *Columbus Line, Inc. v. Gray Line Sightseeing Cos., Inc.,* 120 Cal.App.3d 622, 628, 174 Cal.Rptr. 527, 530 (1981).

In the present case, MCA seeks to invoke the doctrine of collateral estoppel *offensively.* That is, it contends that the Superior Court determination in its favor prevents Charly Holdings from contesting its liability in the present case. Furthermore, MCA argues, the Superior Court's final judgment precludes Charly Holdings from asserting any defenses (affirmative or otherwise) in this case: Such defenses, MCA argues, should have been raised in the Superior Court action.

■ California courts have recognized the validity of an offensive use of collateral estoppel.[1] *In re Estate of Gump,* 1 Cal.App.4th 582, 608, 2 Cal.Rptr.2d 269, 286 (1991). While closer scrutiny is given to the offensive use of collateral estoppel due to its broader due process implications, the basic elements of the doctrine are the same. In *Imen v. Glassford,* 201 Cal.App.3d 898, 906, 247 Cal. Rptr. 514, 518 (1988), the California Court of Appeals recognized the applicability of offensive collateral estoppel, while enumerating the additional due process concerns it invokes, as expressed by the Supreme Court in *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The *Imen* Court acknowledged a trial court's broad discretion in applying offensive collateral estoppel while quoting the Supreme Court's concerns about a prior defendant's incentive to defend, the possible inconsistency of prior judgments, and the prior availability of procedural defenses. *Imen,* 201 Cal.App.3d at 906, 247 Cal.Rptr. at 518. As the following discussion illustrates, none of these concerns are implicated substantially in the present case, therefore making an application of offensive collateral estoppel appropriate.

In the present case, the first element of collateral estoppel, a final judgment on the merits, is uncontested. The Superior Court's final judgment against Sehorn/Red Dog is public record, has been judicially noticed by this Court,[2] and is uncontested by Charly Holdings. Likewise, the third element of collateral estoppel, identity of issues presented, is met. MCA has met its burden of showing that the primary issue it seeks summary adjudication on (that is, who has right, title and interest in the Chess Masters recordings) is the same as that litigated before and conclusively determined by the Superior Court. *See Jackson v. City of Sacramento,* 117 Cal.App.3d 596, 602–03, 172 Cal.Rptr. 826, 828–29 (1981) (discussing the identity of issues requirement). This case turns then on the second element of collateral estoppel: identity or privity among the parties in the first action and those against whom the estoppel is asserted.

---

**1.** Traditionally, the doctrines of res judicata and collateral estoppel could only be asserted defensively. That is, a defendant could assert that its liability was precluded by its previously successful defense of the same claim or issue. However, beginning with the Supreme Court's decision in *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), courts began to recognize that a *plaintiff* could take advantage of a defendant's (or its privies') *unsuccessful* defense in another case.

**2.** By Order dated August 30, 1993, this Court granted MCA's request for Judicial Notice of the Superior Court's proceedings in *MCA Records, Inc. v. Marshall Sehorn,* Case No. BC 002490.

### 1. Defining Privity.

"Privity" has been defined under California law as "a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel." *Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 875, 151 Cal.Rptr. 285, 289, 587 P.2d 1098, 1102 (1978) (citations omitted); *see also Ceresino*, 215 Cal.App.3d at 814, 264 Cal.Rptr. at 33. The California Supreme Court has identified the following considerations as relevant to a finding of privity:

In the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication. Thus, in deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need for applying collateral estoppel in the particular case, in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation.

*Clemmer*, 22 Cal.3d at 875, 151 Cal.Rptr. at 289 (citations omitted); *see also Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979) (discussing the due process implications of collateral estoppel but stating that it should nonetheless be applied "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate").

In extending the application of collateral estoppel to entities not parties to the prior litigation of an issue, the Supreme Court has stated that considerations of judicial economy and finality of judgments "are similarly implicated when nonparties assume control over litigation in which they have a direct financial or proprietary interest and then seek to redetermine issues previously resolved." *Montana*, 440 U.S. at 154, 99 S.Ct. at 974. California courts have stated similar considerations:

A nonparty should reasonably be expected to be bound if he had in reality contested the prior action even if he did not make a formal appearance. Thus, collateral estoppel has been applied against nonparties who had a proprietary or financial interest in and control of, a prior action.

*Lynch v. Glass*, 44 Cal.App.3d 943, 949, 119 Cal.Rptr. 139, 143 (1975). The concept of privity has been substantially expanded in recent years as courts increasingly give weight to considerations of judicial economy and finality of judgments in binding parties to prior judicial determinations. "Courts are no longer bound by rigid definitions of parties or their privies for purposes of applying collateral estoppel or res judicata." *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir.1980).

It is clear that Charly Holdings was not an actual party to the Superior Court's determination in *MCA Records v. Marshall Sehorn*. However, as outlined above, under modern interpretations of collateral estoppel, this will not, by itself, prevent the doctrine from applying. Rather, the Court must inquire into the facts of this particular case to determine whether there was sufficient commonality of interest between Sehorn/Red Dog and Charly Holdings in the Superior Court litigation so as to implicate the doctrine of collateral estoppel. *Aerojet–General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir.) ("The question of whether a party's interests in a [previous] case are virtually representative of the interests of a nonparty is one of fact for the trial court."), *cert. denied & appeal dismissed*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975).

Charly Holdings does not contest the fact that its interest in the Chess Masters recordings came directly from a licensing agreement it entered into with Marshal Sehorn and Red Dog Express. *See* Answer at ¶ 20. MCA argues that this agreement, as well as its contention that Charly Holdings financed Sehorn/Red Dog's defense of the Superior Court litigation, show that Charly Holdings was in privity with Sehorn/Red Dog and thus

bound by the Superior Court's judgment.[3] In opposing MCA's motion for summary adjudication, Charly Holdings simply asserts that it was not a party to the Superior Court litigation, and thus is not bound by it—a significant oversimplification of the issue.[4]

In attempting to avoid application of collateral estoppel, Charly Holdings alleges the existence of an oral settlement agreement between Sehorn/Red Dog and MCA in the Superior Court litigation. Charly Holdings argues that this agreement precludes any finding by this Court that it has no rights in the Chess Masters recordings since the agreement purported to recognize such rights. Specifically, Charly Holdings asserts that as a sublicensee of Sehorn/Red Dog, and thus a third-party beneficiary of the alleged oral settlement agreement, it relied to its detriment on the terms of the agreement. This reliance, Charly Holdings claims, estops MCA from revoking the settlement agreement, although it is uncontested that the agreement between MCA and Sehorn/Red Dog was never formally entered into.

While this argument appears to raise significant issues of fact, the lack of evidence presented by Charly Holdings dictates that it must fail. Charly Holdings has failed to make anything more than conclusory allegations regarding the existence of an oral settlement agreement, its reliance on that alleged agreement, and the reasonableness of any such reliance. All of these elements are hornbook requirements for application of the doctrine of promissory estoppel. *Smith v. City & County of San Francisco,* 225 Cal. App.3d 38, 48, 275 Cal.Rptr. 17, 23 (1990) (listing the requirements for promissory estoppel and stating that "[t]he party claiming estoppel must specifically plead all facts relied on to establish its elements"). At the summary adjudication stage Charly Holdings' unsupported allegations cannot allow it

to defeat MCA's motion. *See Marks v. United States Dep't of Justice,* 578 F.2d 261, 263 (9th Cir.1978).

### 2. Charly Holdings' Privity with Marshall Sehorn & Red Dog Express, Inc.

This discussion leads to the ultimate question of whether Charly Holdings was in privity with Sehorn/Red Dog in the Superior Court litigation and thus is bound by that Court's determination. MCA bases its argument for privity on two grounds: (1) the contractual and proprietary relationship between Sehorn/Red Dog and Charly Holdings; and (2) Charly Holdings' participation in and financing of the Superior Court litigation.

#### a. interest in the subject matter of the prior litigation.

MCA bases its first assertion of privity on a claim that since Charly Holdings acquired its interest in the Chess Masters recordings by a license agreement from Sehorn/Red Dog, it is in privity with Sehorn/Red Dog with respect to the Chess Masters recordings. Under the traditional rule of privity, this argument would fail.

Traditionally, acquisition of a successive interest in property could establish privity for collateral estoppel purposes only with respect to " 'an interest in the subject matter of the litigation *acquired after* rendition of the judgment.' " *Dyson v. California State Personnel Bd.,* 213 Cal.App.3d 711, 723, 262 Cal.Rptr. 112, 118 (1989). Under this rule, a transferee who acquired property from another *after* that transferor had been adjudged to have no interest in the property would be deemed in privity with the transferor for purposes of determining interest in the property. In the present case, the license agreement between Sehorn/Red Dog and Charly Holdings for the Chess Masters recordings was entered into in 1987, *before* the

---

3. That judgment conclusively established that Sehorn and Red Dog never had any rights in the Chess Masters collection, and that, as per Sehorn and Red Dog, MCA has exclusive right, title and interest in the Chess Masters collection. Judgment of Sept. 11, 1992, Ex. "B" to MCA's Request for Judicial Notice.

4. Nowhere in Charly Holdings' motion, opposition, or reply does it cite a single case in support

of its contention that it was not in privity with Sehorn/Red Dog. In attempting to refute a finding of privity, Charly Holdings simply goes on to discuss the litany of affirmative defenses raised in this case that were not before the Superior Court. These arguments, while they might be tangentially relevant to the common issue element of collateral estoppel, are irrelevant to a finding of privity.

September 11, 1992 Superior Court judgment. Thus, under the traditional rule of successive interests in property, privity would not be found.

The traditional definition of privity has, however, been expanded as courts "in the interest of justice and to prevent expensive litigation, are striving to give effect to judgments by extending 'privies' beyond the classical description." *People ex rel. California v. Drinkhouse,* 4 Cal.App.3d 931, 937, 84 Cal.Rptr. 773, 776 (1970). The *Drinkhouse* case in particular expanded the "successive relationship" concept to find privity when an interest in property was acquired *before* judgment was entered against the transferor. *See id.* at 938–39, 84 Cal.Rptr. at 777.

Focusing "not on a concept of identity of parties, but on the practical situation," the *Drinkhouse* court held that the grantee of a property interest was collaterally estopped from relitigating issues previously resolved against his grantor in interest. *Id.* at 937, 84 Cal.Rptr. at 776. The court came to this conclusion in spite of its finding that the grantee's interest in the property was conveyed *before* judgment was entered against his grantor. *Id.* In *Drinkhouse,* the court applied the doctrine of collateral estoppel based in part on its finding that the defense presented had been fully advocated in the prior case. *Id.* at 938, 84 Cal.Rptr. at 777. This bound the appellant in *Drinkhouse* despite the fact that he had *no* control over or involvement in the prior action. As discussed in more detail *infra,* in the present case, Charly Holdings had significant participation and involvement in the *Sehorn* litigation, strengthening the argument for application of collateral estoppel.[5] Furthermore, the proprietary relationship between Sehorn/Red Dog and Charly Holdings is closer than that which existed between the grantor and grantee in *Drinkhouse.* In this case, Sehorn/Red Dog did not convey to Charly Holdings their *entire* interest in the Chess Masters recordings before the Superior Court's judgment. Rather, they licensed to Charly Holdings a purported interest in the Chess Masters recordings for 11.5 years, retaining the underlying interest in the recordings.[6] This retained interest shows that Sehorn/Red Dog and Charly Holdings had *mutual* rather than successive interests in the defense of the Superior Court litigation, providing further support for a finding of privity. Parties' mutual proprietary interests in the subject matter of litigation have long been recognized as sufficient grounds upon which to base a finding of privity. *See Clemmer v. Hartford Ins. Co.,* 22 Cal.3d 865, 875, 151 Cal.Rptr. 285, 289, 587 P.2d 1098, 1102 (1978); *Lynch v. Glass,* 44 Cal.App.3d 943, 949, 119 Cal.Rptr. 139, 143 (1975).

In *Ceresino v. Fire Ins. Exchange,* 215 Cal.App.3d 814, 264 Cal.Rptr. 30 (1989), the concept of privity was extended further in a case involving facts similar to those before this Court. The *Ceresino* court, relying in large part on *Drinkhouse,* held that an insured was precluded from relitigating issues already determined in a suit between the insurer and a claimant. Unlike *Drinkhouse,* the *Ceresino* Court did not base its finding of privity on mutual or successive interests in the same tangible property. Rather, the Court's decision was grounded in a property interest more akin to that in the case before this Court. That is, a common contractual interest. In *Ceresino,* that mutual interest arose out of an insurance contract, while in the present case it arises out of a licensing agreement between the Defendants to this action and the Defendants in the *Sehorn*

---

5. Charly Holdings has noted that a number of the defenses it asserts in this case were never considered by the Superior Court in the *Sehorn* litigation. While this may be true, it will not impact this Court's finding of collateral estoppel. "If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged." *City of Glendale v. Gardner,* 10 Cal. App.3d 777, 781, 89 Cal.Rptr. 219, 222 (1970).

6. The July 1, 1987 licensing agreement between Sehorn/Red Dog and Charly Holdings provided, in part that "The terms of this Agreement, and all of [Charly Holdings] rights hereunder shall be in full force and effect, for a period of ELEVEN (11) YEARS and SIX (6) Months commencing on the date hereof." July 1, 1987 Agreement Between Red Dog Express, Inc. and Charly Holdings, ¶ 4(a), Ex. "B" to Declaration of Harvey W. Geller.

case. The subject matters differ, but the common element is the same. Other factors identified as relevant by the Court in *Ceresino* are also present in this case, in particular, Charly Holdings' knowledge and involvement in the *Sehorn* case, see *Ceresino,* 215 Cal. App.3d at 820–21, 264 Cal.Rptr. at 34, and Charly Holdings' compromise veto over any settlement of the *Sehorn* litigation. *Id.*

Furthermore, Charly Holdings' prior opportunity and incentive to assert a position or defense argues for application of collateral estoppel against it. A significant factor in applying collateral estoppel against a non-party has been identified as "whether the losing party in the suit which is asserted to have a preclusive effect had the same interest as the party to be precluded, and whether that losing party had a strong motive to assert that interest." *Aronow v. LaCroix,* 219 Cal.App.3d 1039, 1049, 268 Cal.Rptr. 866, 872 *review denied* (1990), *cert. denied,* 498 U.S. 1105, 111 S.Ct. 1009, 112 L.Ed.2d 1091 (1991); *see also Imen v. Glassford,* 201 Cal. App.3d 898, 907–08, 247 Cal.Rptr. 514, 519 (1988). The Defendants in *Sehorn* had every reason to argue all possible defenses, including those presented by Charly Holdings in the case before this Court. As Charly Holdings itself has pointed out, Sehorn/Red Dog's interest in defending the *Sehorn* action was, if anything, greater than that of Charly Holdings in this case. As Charly Holdings concedes, its interest was only as a "sub-licensee" to the Chess Masters recordings, with the primary interest in the recordings (at least before the Superior Court's declaratory judgment) being retained by Sehorn/Red Dog. *See* Defendant's Opp'n to MCA's Motion, at 6. Charly Holdings therefore cannot argue before this Court that its interests were not adequately represented before the Superior Court, nor that it has some incentive to assert defenses before this Court that Sehorn/Red Dog did not have before the Superior Court.

Moreover, if Charly Holdings was allowed to relitigate the issue of MCA's rights in the Chess Masters recordings, the potential for inconsistent judicial determinations would arise.[7] Specifically, while the Superior Court determined that Sehorn/Red Dog had no interest in the Chess Masters recordings, this Court, based on the evidence to be presented, could theoretically determine that Sehorn's sub-licensee, Charly Holdings *does* have some interest in the recordings. Such an anomalous result would undermine the integrity of the judicial process, and is a primary reason for the creation and application of the doctrine of collateral estoppel. *See Ceresino,* 215 Cal.App.3d at 820–21, 264 Cal.Rptr. at 34; *Drinkhouse,* 4 Cal.App.3d at 938–40, 84 Cal.Rptr. at 777–78.

### b. *controlling or participating in the prior litigation.*

While Charly Holdings' mutual interest in the subject matter of the *Sehorn* litigation establish sufficient grounds upon which to base an application of collateral estoppel, the facts of this case point to additional justifications. Courts have recognized that under the doctrine of collateral estoppel "one who has a proprietary or financial interest in and controls the conduct of a lawsuit should expect to be and can be, bound by the result reached in that lawsuit." *Aronow,* 219 Cal. App.3d at 1050, 268 Cal.Rptr. at 873. As the Court in *Aronow* explained, "[s]uch control ... need not be complete.... And preclusion can apply even in the absence of such control." *Id.* (citations omitted). The mere "power to suggest courses of action" has been suggested as sufficient to establish privity. *Id.*

In this case, Charly Holdings involvement in and control of the Superior Court litigation went so far that on August 1, 1992, it entered into an express written contract with Sehorn/Red Dog agreeing that the Superior Court litigation would not be compromised without Charly Holdings' approval and giving Sehorn/Red Dog $35,000 for defense of the

---

7. In *Montana v. United States,* the Supreme Court stated that "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210.

658

case.[8] In exchange for the agreement, Sehorn/Red Dog extended by five years the time period of Charly Holdings' purported sub-licensing agreement over the Chess Masters recordings. This agreement significantly increased the mutual interests of Sehorn/Red Dog and Charly Holdings in the Superior Court litigation, and illustrated Charly Holdings' significant degree of control over the case. Far lesser indicia of control allowed the California Court of Appeals to find privity in *Ceresino*. *See* 215 Cal.App.3d at 820–21, 264 Cal.Rptr. at 34. Furthermore, Charly Holdings' strong interest in preserving the integrity of its licensor's (i.e. Marshall Sehorn's) interest in the Chess Masters recordings leaves no doubt in this Court's mind that the same positions it takes in this case were sufficiently represented before the Superior Court.

In addition to Charly Holdings' own papers, MCA has provided two documents upon which this Court has based its finding of privity. The first is the July 1, 1987 license agreement by which Marshall Sehorn & Red Dog Express purport to convey to Charly Holdings non-exclusive rights in the Chess Masters recordings for 11.5 years. The second is a written agreement between Sehorn/Red Dog and Charly Holdings, in which Charly Holdings is given a five year extension on its purported interest in the Chess Masters collection, in addition to a compromise veto over the Superior Court litigation in *MCA v. Sehorn*. In exchange, Charly Holdings agreed to convey to Sehorn/Red Dog $35,000 to support the Superior Court litigation. These documents are properly authenticated and introduced as part of a Declaration by Harvey Geller in Support of MCA's Motion. Charly Holdings does not object to the authenticity or validity of these documents and therefore, it is proper for the Court to base a grant of summary adjudication upon them. *See* 10A A. Wright & C. Miller, *Federal Practice & Procedure* § 2721,

at 40 (1983) (materials considered on a motion for summary judgment).

In summation, Charly Holdings' interest in the subject matter of the *MCA v. Marshall Sehorn* litigation, as well as its financing of and compromise veto over that litigation, requires that this Court find Charly Holdings and Marshall Sehorn/Red Dog Express to have been in privity in the Superior Court litigation of *MCA Records, Inc. v. Marshall Sehorn*. Therefore, any judgment against Sehorn/Red Dog by the Superior Court regarding the Chess Masters recordings will be collateral estoppel against Charly Holdings regarding claims by MCA. This collateral estoppel extends not only to MCA's prima facie case that it has exclusive rights to the Chess Masters recordings, but also to any defenses, affirmative or otherwise, that Charly Holdings may have: Since it was a privy to the Superior Court's determination of rights in the recordings, any affirmative defenses it may have against MCA should have been asserted before the Superior Court. *City of Glendale v. Gardner*, 10 Cal.App.3d 777, 781, 89 Cal.Rptr. 219, 222 (1970).[9]

### D. MCA's Additional Requests for Summary Adjudication

In addition to its motion for summary adjudication on the application of collateral estoppel, MCA has asked to Court for a ruling on issues relating to trademark infringement, designation of false origin, and unfair competition. However, these issues appear to relate primarily to Defendants' use of the Chess Masters recordings, an issue on which the Court has not been sufficiently briefed on to make a determination. MCA has not presented the Court with evidence regarding Charly Holdings' use of the Chess Masters recordings, nor has Charly Holdings had an opportunity to contest such evidence. Moreover, in the August 22, 1994 discovery hearing before this Court, Defendant's use of the

---

**8.** This contract is attached as Exhibit "E" to the Declaration of Harvey Geller in Support of MCA's Motion for Summary Adjudication.

**9.** In *City of Glendale*, the California Court of Appeal stated that if an issue "is actually raised by proper pleadings and treated as an issue in the case, it is conclusively determined by the first

judgment. But the rule goes further. If the matter was within the scope of the action, related to the subject-matter, and relevant to the issues so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged." 10 Cal.App.3d at 781, 89 Cal.Rptr. at 222.

Chess Masters recording was stated to be a primary issue upon which the parties' discovery efforts had been frustrated.

While determination of these additional issues will likely flow from the Court's application of collateral estoppel, at this time, neither party has submitted sufficient evidence for the Court to make a determination. Thus, while the Court can determine by application of collateral estoppel that Charly Holdings has no interest in the Chess Masters recordings, it is not possible at this point to rule on the trademark, false origin, and unfair competition issues, and MCA's motion for summary adjudication of these issued must be **DENIED**.

### E. Charly Holdings' Motion for Summary Adjudication

This Court's application of collateral estoppel will resolve Charly Holdings' motion for summary adjudication. The Superior Court judgment stated that as per Sehorn/Red Dog, MCA had exclusive rights, title and interest in the Chess Masters recordings. Thus, this Court's finding that Charly Holdings was in privity with Sehorn/Red Dog will bind Charly Holdings to the Superior Court's determination that MCA has exclusive rights in the recordings, preventing them from asserting before this Court (as their motion for summary adjudication does) that MCA's title is defective. All such defenses to MCA's case should have been raised before the Superior Court and Sehorn/Red Dog's failure to do so previously will estop both it and its privies from doing so before this Court. *City of Glendale,* 10 Cal.App.3d at 781, 89 Cal. Rptr. at 222.

## IV. CONCLUSION

MCA's motion for summary adjudication on the issue of Charly Holdings' interest in the Chess Masters recordings is hereby **GRANTED**. Charly Holdings' compromise veto over the Superior Court litigation, along with its financing of, knowledge, participation, and involvement in that action show that it was in privity with the Defendants to that action, Marshall Sehorn and Red Dog Express, Inc. Moreover, the evidence before this Court indicates that the mutual proprie-

tary interests of Sehorn/Red Dog and Charly Holdings in the Chess Masters recordings are sufficient for the Court to find that Charly Holdings' defenses and positions had a forceful advocate and adequate representation before the Superior Court in *MCA Records, Inc. v. Marshall Sehorn.* These factors, along with the policy favoring finality of judgments and judicial economy argue in favor of binding Charly Holdings to the Superior Court's judgment in *MCA v. Marshall Sehorn.* Finding privity, this Court must adhere to the Superior Court's determination and rule that Charly Holdings does not now have, nor has it ever had, any right, title or interest in the Chess Masters recordings and that as per Charly Holdings, MCA has exclusive right, title and interest in the recordings.

MCA's Motion for Summary Adjudication on the issues of trademark infringement, designation of false origin, and unfair competition, however, will be **DENIED**. There is insufficient evidence on Charly Holdings' use of the Chess Masters recordings for the Court to presently make a determination on these issues.

Defendant, Charly Holdings' Motion for Summary Adjudication is resolved by this Court's application of collateral estoppel, and is hereby **DENIED**. Plaintiff, MCA Records' statement of uncontroverted facts and conclusions of law, as amended, is hereby incorporated into this order.

**IT IS SO ORDERED.**