[Civ. No. 17254. First Dist., Div. One. June 3, 1957.]

VERA S. FORD, Respondent, v. PROVIDENCE WASH-INGTON INSURANCE COMPANY (a Corporation), Appellant.

Hoge, Fenton & Jones for Appellant.

Morgan & Beauzay for Respondent.

BRAY, J.—Defendant appeals from plaintiff's judgment for $5,306.97.

## QUESTIONS PRESENTED

1. May an insurer under a public liability policy covering the owner and the operator of an automobile, question in an action on the policy the implied finding of a jury in a personal injury action as to the person operating the automobile?

2. Does the good faith denial of drivership by a person whom a jury in a personal injury action impliedly finds to be the driver, and his failure to ask defense of the insurer, release the insurer of all obligations under the policy?

## RECORD

Defendant issued to Peter Cardinale a policy covering his Chevrolet automobile, for liability of $5,000 for injury to or death of one person and $10,000 for injuries to or deaths of two or more persons. The policy covered not only Cardinale but anyone operating the automobile with his permission. August 6, 1954, the Chevrolet was involved in a three-vehicle accident. In the car were Barry Ford, aged 15, Roxanna Way, aged 15, and Alfred Gaspar, Jr., aged 15. Both Barry and Roxanna died as a result of their injuries. Alfred sustained major injuries. Barry's mother, Vera S. Ford, filed suit against Alfred, Cardinale and others for the wrongful death of Barry, alleging Alfred to have been driving. A cross-complaint was filed on Alfred's behalf against Barry's mother, Cardinale and others, alleging Barry to have been the driver of the Chevrolet. At the trial the Ford family claimed that Alfred was driving the car, while the Gaspar family claimed that Barry was the driver. Cardinale obtained a judgment of nonsuit both as to Vera Ford's complaint and as to Alfred's cross-complaint. A judgment on a jury verdict was rendered in favor of all defendants and cross-defendants except Alfred, and in favor of Vera Ford against Alfred in a sum in excess of $15,000, based upon Vera's cause of action against Alfred for wilful misconduct in the operation of the Chevrolet. Thereafter Vera brought this action upon the theory that defendant was obligated under its insurance policy, to indemnify Alfred within the liability limit above mentioned. The trial court rendered judgment in her favor for $5,306.97.

## FACTS

They are undisputed. The day of the accident Cardinale loaned the Chevrolet to Barry with the understanding that Alfred would drive the car. As above stated, two of the occupants of the car were killed, so their version of who was driving could not be obtained. Alfred was in the hospital for several weeks after the accident. Upon receiving notice of the accident defendant attempted to interview Alfred but his father stated that his physical condition prohibited it. The father agreed to inform defendant when Alfred was in condition to be interviewed. The father obtained an attorney to represent Alfred's interests. That attorney notified defendant that he would handle all dealings with defendant. The attorney stated that Alfred denied driving the car, that the attorney had arranged with the district attorney for Alfred to undergo a lie detector test, and that the results of the test failed to prove that in denying that he was driving, he was not telling the truth. At a coroner's inquest Alfred, under oath, denied that he drove the Chevrolet. Summons and complaint in the Vera Ford action were served on both Cardinale and Alfred. Cardinale delivered his copy to defendant. In connection with that action Alfred's deposition was taken. He again asserted that he did not drive the car. He claimed that Barry Ford was the driver. At the trial he testified that Barry was the driver. As before stated, Alfred was represented throughout the Ford case by his own attorney. Defendant was not requested to appear for Alfred at the inquest, the taking of the deposition, or the trial of the case, although counsel was provided by defendant on all three occasions representing Cardinale.[1] Defendant was at no time requested to provide representation of or assistance to Alfred, nor did defendant ever offer such to either Alfred or his father.

### 1. Can defendant question drivership?

Of course, defendant's liability to plaintiff depends under the policy primarily upon whether Alfred was driving the automobile at the time of the accident. As Vera Ford's right to recover damages against Alfred for wilful misconduct depended wholly upon the determination that he was operating the car at the time of the accident, the jury's verdict

---

[1] Counsel left the trial of the case when Cardinale was granted a non-suit. It apparently was granted on the theory that the owner of a vehicle is not liable for the wilful misconduct of a permissive user.

436

was an implied finding that he was. Defendant contends that it is not bound by that finding, and that the question may be redetermined in the trial court here. While it contended that plaintiff had the burden of proving in this case, independently of the finding in the personal injury case, that Alfred was driving the automobile, it offered to prove that he was not. The trial court did not permit evidence upon the subject, holding that defendant was bound by the jury's determination. We agree with the trial court. ▆ Defendant concedes that the general rule is that an insurer who has had an opportunity to defend is bound by the judgment against its insured as to all issues which were litigated in the action against the insured, citing 29 American Jurisprudence 813. The rule in California is in accord with that rule. (See *Bachman* v. *Independence Indemnity Co.* (1931), 112 Cal. App. 465, 468-469 [297 P. 110, 298 P. 57]; *Lamb* v. *Belt Casualty Co.* (1935), 3 Cal.App.2d 624, 630, 631 [40 P.2d 311].) It contends, however, that as no privity could exist between it and Alfred unless he was the driver, the general rule does not apply, and that a rule similar to that where the insurer has no notice of the litigation should apply. ▆ With certain exceptions unimportant here, that rule is that the judgment in an action of which the insurer had no notice is not res judicata as to the insurer of any of the issues therein.[2] But that rule could not be applicable here. ▆ Defendant knew of the accident, of the coroner's inquest, and the personal injury action. It further knew that the Chevrolet was being driven either by Alfred or Barry, and that whichever one drove, that one was covered by its policy. It knew that the complaint in the personal injury action charged Alfred as being the driver. It knew that the jury must determine which of the two boys was the driver.[3] True, it was never called upon to represent Alfred (or Barry's interests, for that matter) in the litigation. But Alfred could not consistently with his insistence that he was not the driver, call upon defendant for assistance, and had he done so defendant would undoubtedly have said that as its only liability to assist him would be if he were the driver and he said he was not, it would not give him the assistance. Defendant's repre-

---

[2]Defendant cites *Merriman* v. *Maryland Casualty Co.*, 147 Wash. 579 [266 P. 682, 63 A.L.R. 1040]; *Transylvania Casualty Ins. Co.* v. *Atlanta*, 35 Ga.App. 681 [134 S.E. 632]; note, 63 A.L.R. 1043.

[3]While the girl was also an occupant of the Chevrolet, no one ever contended that she drove it.

sentative informed Alfred's lawyer that because Alfred claimed not to be the driver, defendant would not represent Alfred in the litigation. It must be remembered that in the personal injury action there was not involved the question of drivership between one covered by the policy and one who would not be so covered. The driver could only be one of two persons, and whichever he was he was covered.

The general rule that the personal injury judgment is res judicata as to the insurer of the issues thereby determined depends primarily upon notice to the insurer of the pendency of the action. That requirement was met here. Defendant had notice from its named assured, Cardinale. It further had notice from the very beginning that the operator of the car was one of two persons, either one of whom would qualify for coverage under the policy. While the jury found against Alfred's statement that he was not the driver, no question of his good faith appears in the case. Defendant still contends that Alfred was not the driver. Defendant here was content to sit back without taking a position in the personal injury case, as to drivership, without offering to defend either of the persons charged with drivership, and now, regardless of the determination of the jury, to take a position opposite to the jury's implied finding, and relitigate the issue in order to disclaim coverage, and to escape liability; this, in spite of the fact that the policy obligated defendant to be liable whichever of the two persons in question a jury found to be the driver.

As pointed out in *Greer-Robbins Co.* v. *Pacific Surety Co.*, 37 Cal.App. 540, 543 [174 P. 110], the insurer's obligation to defend is one that must be determined before the outcome of the action brought against the assured, not thereafter. In the Greer-Robbins case the insurer took the position that until the outcome of the personal injury case it could not determine whether the one demanding protection was or was not the insured. The case then went on to state (p. 544): ''There is a more certain basis for a determination of the liability of the appellant to defend, and that basis is to be found in the allegations of the complaint in each action for damages against the respondent. We construe the policy to mean that it is the duty of the appellant, under its terms, to defend every action in which the complaint shows 'a claim for damages covered by this policy.' '' ''In determining whether or not the appellant was bound to defend, its denial of liability and refusal to defend, based upon its own investi-

gation of the facts in the case, are to be disregarded. The language of its contract must first be looked to, and next, the allegations of the complaints in each action for damages against the insured.'' (*Lamb* v. *Belt Casualty Co., supra,* 3 Cal.App.2d at p. 630.) Applying that test here—the fact that the complaint charged Alfred with being the driver showed a claim for damages covered by the policy and placed the duty on defendant of protecting Alfred against the charges in that complaint. We are not directly concerned here with defendant's failure to defend Alfred other than as it affects the question of defendant being bound by the jury's implied findings. Had defendant performed that duty there could be no question under the authorities that any of the issues determined by the jury would be binding on defendant. Having failed to perform that duty and having had full notice of the issues being presented to the jury, defendant is likewise bound. ■ Moreover, this action is by a third person on a contract (the insurance policy) which under the California rule is regarded ''as a contract between the insurer and the insured for their benefit and for the benefit of an unknown third person who becomes known and identified upon being injured by the insured.'' (*Bachman* v. *Independence Indemnity Co., supra,* 112 Cal.App. at p. 483.) As here, the driver of the car which caused the injury in the Bachman case was not the insured named in the insurance policy. He came under the omnibus clause covering any person legally driving the automobile of the named insured. ■ As there stated, the injured person's right to recover under the contract made for his benefit, cannot be defeated by the insured and the insurer. ■ Of course, the third person (plaintiff) would have no greater rights under the contract than would Alfred. (See *Hynding* v. *Home Acc. Ins. Co.,* 214 Cal. 743 [7 P.2d 999, 85 A.L.R. 13].) ■ However, plaintiff's rights cannot be defeated by the act of defendant in refusing to recognize its possible liability when it received her complaint showing that she alleged Alfred to be the car driver—an allegation which, if true, brought not only Alfred but plaintiff under the protection of the policy.

2. *Cooperation.*

■ It is well settled that where an injured person sues the insurer of the one causing the injury, the injured person stands in no better position than the assured and a violation of the cooperation clause which would cause the insured to be barred from indemnity under his policy will likewise

bar the injured person from recovering against the insurer. (*Hynding* v. *Home Acc. Ins. Co., supra* (1932), 214 Cal. 743; *Valladao* v. *Fireman's Fund Indem. Co.* (1939), 13 Cal.2d 322, 328 [89 P.2d 643].)

The policy provided that "If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative." The named insured, Cardinale, complied with this clause. "The insured shall cooperate with the company and upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits." Defendant contends that Alfred violated both these clauses. Except for refusal to allow interviews while Alfred was in the hospital (which refusal was reasonable in view of Alfred's serious injuries), the only acts of Alfred which defendant claims violated these clauses were his failure to request defendant's assistance (in spite of the fact that defendant had already notified Alfred's attorney that it disclaimed liability and would not defend), and his insistence that he was not the driver of the car. Defendant at no time made any requests of Alfred and therefore he did not refuse any. ▮▮▮ "The denial of liability on the part of the insuring company and its refusal to defend the suits constituted such a breach of the contract that the insured was released from his obligation to leave the management thereof to it, and was justified in proceeding to defend on his own account." (*Lamb* v. *Belt Casualty Co., supra,* 3 Cal.App.2d at p. 630.) See also *O'Morrow* v. *Borad,* 27 Cal.2d 794 [167 P.2d 483, 163 A.L.R. 894], where the court held that the refusal of the insured to allow the insurer to defend him in the personal injury action was justified and did not constitute lack of cooperation as required by the policy. ▮▮▮ While the circumstances there are different from those here, the ruling that "Forfeitures, however, are not favored; hence a contract, and conditions in a contract, will if possible be construed to avoid forfeiture. [Citations.] This is particularly true of insurance contracts" (p. 800) is applicable. Moreover, the case shows the extent to which the courts go in determining cooperation under an insurance policy.

As far as the record goes, and as found by the trial court, Alfred's statements were made in good faith and in nowise did he knowingly misrepresent to defendant any material fact.

The jury's implied finding need not necessarily be construed as a finding that Alfred lied in claiming not to have been the driver. It could well have been a finding that he was mistaken. The defendant seems to take the position that the jury and not Alfred was mistaken. Defendant's position is such that an insurance policy which purports to cover the driver of an automobile for liability in an accident does not cover such driver, where in good faith he claims he was not the driver, and yet is found by a jury to have been the driver.

 The insured is required to give a fair and frank disclosure of information reasonably demanded by the insurer to enable it to determine if there is a defense or whether the insurer should settle. (*Valladao* v. *Fireman's Fund Indem. Co., supra,* 13 Cal.2d at p. 329.) "Truthfulness seems to be the keystone of the cooperation arch. The insured must tell his insurer the complete truth concerning the accident, *and he must stick to this truthful version throughout the proceedings." (Home Indemnity Co. of New York* v. *Standard Acc. Ins. Co.,* 167 F.2d 919, 924.)

The evidence in this case fails to show any violation by Alfred of these rules. The Valladao case, relied upon by defendant, is easily distinguishable from ours. There the insured and his two riders deliberately misrepresented the facts to the insurer. Later, in spite of previous insistence upon the misrepresentations as being true, the three admitted that they had falsified. The court held that repeated and wilful misrepresentations by the insured to the insurer over a period of five months constituted a breach of the cooperation clause of the policy. As pointed out by the trial judge in our case, the Hon. Anthony Brazil, in his memorandum opinion, the decision in the Valladao case must be limited to a situation in which the insured wilfully misrepresents the facts to the insurer. This is not such a case. As Judge Brazil further states: "Here there was no offer by the insurance company to defend; and no request for its assistance. As a matter of fact the company received copies [of] all pleadings in the original case from Mr. Cardinale, the person it actually represented. There appears on the part of Gaspar, Jr. no evasion, no inconsistency, no re-canting of testimony; but only a constant denial on his part that he was the driver; which is the same thing as saying not the insured. Despite his protest and his sworn testimony, the jury chose to believe, under a rule of proof requiring, not certainty, but only preponderance of evidence, that he was

in fact the driver (and as a consequence the assured.) . . . There is here no admission of fraud, falsification or wrongdoing. In fact the insurance company, who now claims noncooperation, offers to prove that the jury was wrong in the first place; and that Alfred Gaspar, Jr. was not in fact driving the car. . . . While I find that Alfred Gaspar, Jr. was the driver of the car, this does not mean, and it is not the equivalent of saying that he 'knowingly, wilfully and repeatedly misrepresented' anything. · The record discloses the insurance company still believes him. A logical inference can be drawn; that from the outset, far from being misled or prejudiced by anything Gaspar said or didn't say, did or didn't do, it was completely satisfied with the turn of events that would have exonerated it from financial responsibility for the death of Barry Ford, had the jury found Alfred Gaspar, Jr. was not the driver.''

### Certain Findings

Defendant complains that the finding that defendant did not inform Alfred of the existence of the omnibus clause and the finding that defendant still offers to prove that Alfred was not driving the car, are unsupported by the evidence. Strictly speaking, defendant did not inform Alfred of that clause. However, defendant was not required to so inform Alfred for the reason that in the discussion between Alfred's attorney and defendant's attorney, when the latter stated that defendant disclaimed all liability in view of Alfred's insistence that he was not the driver, it was obvious that Alfred's attorney knew of the clause. The record fails to disclose any formal offer by defendant to prove that Alfred was not the driver. However, it is obvious that defendant's desire to relitigate the drivership issue is for the purpose of proving that Alfred was not the driver. ■ These two findings are in nowise necessary to the judgment, and being, strictly speaking, incorrect, may be disregarded.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.