[No. G016540. Fourth Dist., Div. Three. Jan. 29, 1998.]

HORACE MANN INSURANCE COMPANY, Plaintiff and Respondent, v. BARBARA B., Defendant and Appellant.

160

**COUNSEL**

James W. Parker for Defendant and Appellant.

Charles H. Carpenter for Plaintiff and Respondent.

**OPINION**

**SONENSHINE, J.**—Barbara B. appeals from a judgment declaring Horace Mann Insurance Company (Horace Mann) has no obligation to indemnify its insured, Gary Lawrence Lee, for a judgment of more than $500,000, entered against him in Barbara's 1991 civil action arising out of Lee's misconduct while he was her junior high school teacher.

We have seen this coverage case before. The first time around, we affirmed a summary judgment in favor of Horace Mann, finding as a matter of law the insurer had no duty to defend Lee, who had entered a plea of nolo contendere to one count of criminal sexual molestation of his thirteen-year-old student. (Pen. Code, § 288, subd. (a).) Relying on *J. C. Penney Casualty Ins. Co.* v. *M. K.* (1991) 52 Cal.3d 1009 [278 Cal.Rptr. 64, 804 P.2d 689] [liability insurer owes no duty to indemnify insured for damages arising out of child molestation]), we concluded none of Barbara's claims raised the potential of coverage under the policy.

Our Supreme Court, granting review, disagreed. In *Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076 [17 Cal.Rptr.2d 210, 846 P.2d 792], it

reversed our decision and remanded for further proceedings. Because the case came before it "in somewhat of a factual vacuum" (*id.* at p. 1083), the court had no occasion to decide what "extrinsic evidence might defeat the duty to defend." (*Ibid.*) But it found there were "unresolved factual disputes concerning Lee's . . . conduct apart from his molestation of Barbara." (*Ibid.*) For instance, although Lee had been convicted of "one instance of sexual misconduct outside the policy coverage" (*ibid.*), the possibility remained he might "be held liable for damages within the coverage of the policy stemming from . . . negligent nonsexual conduct in his public relationship with Barbara." (*Ibid.*) The "public relationship" to which the court alluded was carried out primarily in the band room, in the presence of Barbara's classmates and others; inter alia, Lee kissed Barbara on the forehead, hugged her, put his arm around her, permitted her to sit on his lap, made suggestive jokes, allowed speculative rumors to circulate regarding his relationship with Barbara, made her the "teacher's pet," and facilitated special privileges for her so she could spend time alone with him. The court found no evidence these acts "occurred in such close temporal and spatial proximity to [the] molestation as to *compel* the conclusion that they [were] inseparable from it for purposes of determining whether Horace Mann owed a duty to defend Lee." (*Id.* at p. 1084, original italics.) Thus, the insurer was not entitled to summary judgment.

While the coverage case was in the reviewing courts, the underlying lawsuit against Lee went forward. Prior to trial, Barbara and Lee entered into a stipulation under which Barbara, expressly waiving her right to seek damages based on sexual molestation, instead agreed to pursue a claim "*for non-sexual misconduct only*" (original italics) and not to execute on Lee's personal assets. Lee's attorney later testified the parties' attempt to categorize the relative percentages of damages flowing from sexual versus nonsexual conduct was utterly meaningless as far as Lee was concerned because, regardless of the outcome, he had nothing at stake financially.[1]

Barbara first testified about private explicitly sexual misconduct which occurred every day of the school year, from the end of September through

---

[1]The trial court made numerous observations about the lack of an adversarial process. On one occasion it asked the parties if they had "any authority that a court trial is an appropriate vehicle to try and set up a claim against an insurance company to establish coverage under *J. C. Penney* . . ." Another time, it noted, "[T]his is a lawsuit between Barbara [B.] . . . and Gary Lee. And there is no insurance company that is a party to this lawsuit." Finally, it stated expressly "for the record," "[A]ll persons, be they individuals, corporations, partnerships, no matter what entity they may assume, are entitled to due process of law before they are going to be bound by a verdict or judgment from the court. [¶] There apparently is available some insurance coverage for Mr. Lee, and this trial is presumably directed toward trying to get some inflated judgment and then applying it against the insurance company. But if you recognize [the] basic premise that all persons are entitled to the due process of law, it is going to be very difficult to have any binding effect from this trial as against any party not present and represented, because you have an adversarial system, and we aren't exactly dealing with

mid-June, except when either she or Lee was absent or there was a school holiday. Sometimes there were three or four incidents a day. Lee kissed her on the mouth, French-kissed her, fondled her breasts, touched her vagina, digitally penetrated her, masturbated her and had her masturbate him, and unsuccessfully attempted to penetrate her with his penis. Barbara stated she underwent counseling for her psychological trauma.

Her attorney then asked her whether she was also seeking damages for "nonsexual touchings." She responded, "Yes." She was then asked to state whether Lee's *public* misconduct—the forehead kissing, hugging, suggestive comments, flirting, special privileges, etc.—should be placed "on the nonsexual side of the ledger." Barbara characterized all such conduct as nonsexual. Following this testimony, one of Barbara's expert witnesses rendered an opinion that 37½ percent of the teenager's total damages during the relevant time period was attributable to the nonsexual conduct.

At the conclusion of the trial, the court found Lee liable for the *only* theory of recovery pursued by Barbara—negligence. In its statement of decision, it noted, "In the course of [Barbara's and Lee's] relationship, various inappropriate conduct by [Lee] occurred ranging from the relatively innocuous to felonious sexual acts . . . . [¶] From the evidence, it is without question that [Lee] owed a duty to [Barbara] to avoid inappropriate behavior and conduct on his part; that [he] breached this duty on innumerable, recurring occasions; and that these breaches caused injury and damage to [Barbara]." Barbara was awarded $7,840 in economic damages and $500,000 in noneconomic damages.

Following remand of the coverage case, Horace Mann filed a first amended and supplemental complaint seeking a declaration it had no indemnification obligation under the criteria enunciated by the Supreme Court in *Horace Mann Ins. Co.* v. *Barbara B., supra,* 4 Cal.4th 1076. The case proceeded to a court trial in February and March 1994.

In its statement of intended decision, the trial court first determined there was collusion insofar as Barbara's civil case appeared to be litigated for the purpose of determining the rights of a third person nonparty—Horace Mann.[2] Then, turning to the coverage case, the court observed, "At this stage of the proceedings we are no longer confronted with the factual vacuum that

the adversary process here as between [Lee's counsel] and [Barbara's] counsel. Statements by [an expert witness] are gross hearsay and inadmissible. But in the absence of any objection, then they are received in evidence. [¶] But there are some fundamental defects in this trial, and I think it is apparent to everybody here in the courtroom."

[2]Acknowledging the conduct of counsel did not appear to have been unlawful or deceitful, and there was no stipulated judgment or stipulation to excessive damages, the court found

existed at the time of the summary judgment motion [regarding duty to defend]. . . . [¶] The evidence now clearly shows that the chronology or sequence of the public acts in the classroom . . . are all in such temporal and spatial proximity to the over 100 acts of intentional criminal sexual molestation to compel the conclusion that the public acts and/or omissions are inseparable from the molestation and in no way independent of it."[3] The court further stated, "[A]ll of the public misconduct, including creating a hostile atmosphere wherein students felt free to tease and joke about Barbara B., are intentional acts, not negligent. These acts were both inherently harmful and essentially part of the now-proven sexual misconduct. The label 'nonsexual' does not apply. Without more they amount to sexual harassment. Combined with the frequent and continuing acts of sexual molestation, they become part and parcel of an intentional pattern of sexual misconduct, inextricably intertwined with and intended to facilitate the molestation." The court found "[t]he very notion of the 'accidental' creation of a hostile environment consisting of kisses, hugs, flirtatious remarks, jokes, lap sitting, and tardy notes is implausible."

The court further found none "of the public acts or omissions of . . . Lee . . . that constituted sexual harassment, and . . . created a hostile and offensive educational environment, come within the Horace Mann policy definition of educational employment activities." It concluded although Lee clearly had the responsibility of supervising and controlling the other students in his classroom, the evidence did not prove he negligently failed to perform those duties; rather, it proved he "intentionally started the jokes and

---

collusion indicated by the following factors: Barbara's attorney proceeded only on the negligence cause of action; Barbara waived her rights to recover damages from Lee for sexual acts; there was a stipulation regarding Lee's nolo contendere plea and Barbara's seeking damages only for nonsexual misconduct; Barbara agreed not to execute on the personal assets of Lee; the trial judge was not informed of the parties' stipulation and agreement at the outset of trial; Barbara and her counsel repeatedly characterized Lee's public acts of sexual harassment as "nonsexual," without objection by Lee's attorney; Lee did not attempt to refute liability, but relied on a "consent" defense, which is no defense to negligence or to civil or criminal molestation of a minor by an adult; Lee's attorney never dealt with the issue of whether Lee's acts of public misconduct were related to the private sexual acts: He simply listed the public acts, "reinforc[ing] that they were all 'nonsexual' " and failing to elicit from Barbara the basis for her opinion Lee's public conduct was nonsexual; and the trial judge in the sexual molestation suit "on more than one occasion questioned what was happening."

[3]The public misconduct recited by the court consisted of "Lee giving Barbara B. tardy notes; kissing Barbara B.'s forehead; Barbara B. sitting on Mr. Lee's lap; Mr. Lee calling Barbara B. jail bait and/or San Quentin quail bait; making comments on her clothing; telling her to come back and see him when she was 18; laughing when students teased about the dollar dance [insinuating Barbara could be bought for that amount]; hugging her; putting his arm around her; letting her have the keys to the band room; permitting her to be in the band room alone; making flirtatious remarks; giving her back massages; putting his hand on her shoulders, back and arms; allowing students to say she was his girlfriend, tease her, comment on her clothing, and make jokes at her expense."

teasing, actively encouraged it, and created the escalation . . . by his intentional public acts that caused the other students to sense the intentional and criminal private sexual activities that he, in fact, was almost daily perpetrating on Barbara B." The public misconduct thus facilitated the sexual molestation, "provid[ing] . . . Lee with an isolated, alienated, more compliant victim." The court found Lee's pattern of sexual exploitation of Barbara "was not performed in the course of [his] educational employment activities nor was it reasonably related to the goal of educating children."

Judgment was entered in favor of the insurer. We affirm.

### DISCUSSION

### I

Barbara contends Horace Mann is bound by the judgment in the third party case because (1) it breached its duty to defend Lee in the tort action, and (2) the finding of Lee's liability for negligent conduct is conclusive. She is wrong.

First, the insurer *did not wrongfully refuse* to defend Lee. Rather, after issuing a reservation of rights letter which indisputably preserved its right to assert policy defenses (see *Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31 [44 Cal.Rptr.2d 370, 900 P.2d 619]),[4] it jointly participated with Lee's homeowners policy insurer in providing Lee with *Cumis* counsel. (*San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913].) Horace Mann's participation stopped only when the trial court determined it had no duty to defend Lee. True, the Supreme Court subsequently found the insurer was not entitled to summary judgment on the issue, but it is undisputed the home-owner's insurer continued to provide Lee with a defense for the duration. As this court has observed, the failure of one insurer to defend is of no consequence to an insured whose representation is provided by another insurer: Under such circumstances, the insured "[is] not faced with 'an undue financial burden' or deprived 'of the expertise and resources available to insurance carriers in making prompt and competent investigations as to the merits of lawsuits filed against their insureds.' [Citation.]" (*Ceresino* v. *Fire Ins. Exchange* (1989) 215 Cal.App.3d 814, 823 [264 Cal.Rptr. 30].) The trial court aptly noted Horace Mann's failure to defend did not harm Lee, who in any event had no financial stake in the outcome. The issue of duty to defend involved only the homeowner's insurer's right to contribution from Horace Mann. Thus Barbara cannot be heard to complain.

---

[4]Horace Mann's reservation of rights letter was adequate.

With regard to collateral estoppel, Barbara misconstrues the extent to which the doctrine precludes the insurer from challenging the underlying judgment against its insured. ■ As stated in *Insurance Co. of the West* v. *Haralambos Beverage Co.* (1987) 195 Cal.App.3d 1308, 1319 [241 Cal.Rptr. 427], "In California, it has long been established that 'if the insurer adequately reserves its right to assert the noncoverage defense later, it will not be bound by the judgment [against the insured].' [Citation.]" (Citing *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 279 [54 Cal.Rptr. 104, 419 P.2d 168] ["If an injured party prevails, that party or the insured will assert his [or her] claim against the insurer. At this time the insurer can raise the noncoverage defense previously reserved." (fn. omitted)]; and *Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co.* (1975) 53 Cal.App.3d 576, 586 [126 Cal.Rptr. 267] [insurer avoids being bound by the judgment by adequately reserving its rights].)

■ *J. C. Penney Casualty Ins. Co.* v. *M. K., supra,* 52 Cal.3d 1009, decided in a context which is not materially distinguishable from this case, conclusively disposes of the issue of collateral estoppel. There, as here, the underlying action by the child and her mother against the insured proceeded to trial *only* on theories of negligence,[5] the insured stipulated he had been negligent as to the child, the court entered a directed verdict with respect to negligence, and the jury awarded the child $400,000. (*J. C. Penney Casualty Ins. Co.* v. *M. K., supra,* 52 Cal.3d at p. 1015.)

In the subsequent declaratory relief action, the trial court decided the insurer was not bound by the jury's finding of negligence; rather, there was merely a presumption of negligence which the insurer could overcome by proper proof. It further determined the insured's violation of Penal Code section 288, including acts of child molestation, constituted a willful act as a matter of law within the meaning of Insurance Code section 533 and was therefore not covered by the insurance policy. (*J. C. Penney Casualty Ins. Co.* v. *M. K., supra,* 52 Cal.3d at p. 1016.) The Court of Appeal agreed the negligence finding did not collaterally estop the insurer from litigating the issue of whether the insured's conduct was intentional. (*Ibid.*) The Supreme Court also agreed, finding, "The Court of Appeal correctly held that J. C. Penney is not collaterally estopped by the underlying judgment from asserting that [the insured's] conduct was intentional rather than negligent." (*Id.* at p. 1017.)

The *J. C. Penney* court stated the well-established law that an insurer who adequately reserved the right to assert a noncoverage defense will not be

---

[5]The mother sought to recover for negligent infliction of emotional distress.

bound by a judgment against the insured in favor of the injured party. (*J. C. Penney Casualty Ins. Co.* v. *M. K., supra,* 52 Cal.3d at p. 1017.) It added, "To overcome the rule that an insurer does not waive its right to deny coverage, an insured must show that, after the insurer reserved its rights, '. . . the insurer either intentionally relinquished a known right, or acted in such a manner as to cause the insured reasonably to believe the insurer had relinquished such right, and that the insured relied upon such conduct to his [or her] detriment.' [Citation.]" (*J. C. Penney Casualty Ins. Co.* v. *M. K., supra,* 52 Cal.3d at pp. 1017-1018.) It noted there was no evidence suggesting the insurer retracted or limited its reservation of rights. (*Id.* at p. 1018.) It then concluded its discussion, stating, "We reiterate the rule that an insurer that timely and adequately reserves its right to deny coverage and that does not subsequently intentionally waive its reservation of rights is not collaterally estopped by a judgment in favor of a third party against its insured. J. C. Penney is not collaterally estopped to deny coverage in this action for declaratory relief." (*Ibid.*)

Our Supreme Court has observed, "[T]he court in the third party suit does *not* adjudicate the issue of coverage. . . . *The only question there litigated is the insured's liability.*" (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 279, italics added.) The trial court here, discerning the distinction between liability and theory of liability—i.e., the *coverage issue*—properly found, "[W]e are bound by the decision in the [third party action] that Lee is liable and that Barbara B. was damaged in the sum of $507,840. However, on the issue of coverage under the policy of insurance issued by Horace Mann to Gary Lee, we are not bound by the finding of negligence."[6]

## II

The court determined Lee's misconduct could not be divided into sexual and nonsexual compartments. Because Barbara's brief contains no legal argument as to that finding, we deem the issue waived and pass it without consideration. (See *Mansell* v. *Board of Administration* (1994) 30 Cal.App.4th 539, 545, 546 [35 Cal.Rptr.2d 574].) Even were we to reach the

---

[6]We need not consider Barbara's contention regarding an improper finding of collusion. The issue would be relevant if the insurer had improperly refused to defend or if coverage were found. (See *Samson* v. *Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 240 [178 Cal.Rptr. 343, 636 P.2d 32]; *Coit Drapery Cleaners, Inc.* v. *Sequoia Ins. Co.* (1993) 14 Cal.App.4th 1595, 1612 [18 Cal.Rptr.2d 692]; *Xebec Development Partners, Ltd.* v. *National Union Fire Ins. Co.* (1993) 12 Cal.App.4th 501, 540 [15 Cal.Rptr.2d 726].) Neither circumstance is present here.

merits, there is substantial evidence and apt law supporting the court's conclusion.[7]

Furthermore, we reject Barbara's contention the court "failed to go through the requisite analysis . . . under Insurance Code section 533, to determine whether or not there was an intent to cause harm by both GARY LEE and the students for the public misconduct, and harm that it caused to BARBARA B." Barbara waived any defects in the statement of decision by failing to file objections. (Code Civ. Proc., § 634; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1134 [275 Cal.Rptr. 797, 800 P.2d 1227].)

And in any event, the court properly found all of Lee's public misconduct—his sexual harassment, as well as his creating and fostering a hostile environment in which Barbara found herself without friends among her peers—was part and parcel of a design to provide himself with "an isolated, alienated, more compliant victim" of his private sexual molestation. The legal significance of this finding is Lee's private *and* public acts were inseparably *willfully harmful* under Insurance Code section 533.[8] ■ As stated in *J. C. Penney Casualty Ins. Co.* v. *M. K., supra,* 52 Cal.3d at page 1021, "[A] child molester can[not] disclaim an intent to harm his [or her] victim. . . . The very essence of child molestation is the gratification of sexual desire. *The act is the harm.* There cannot be one without the other. Thus, the intent to molest is, by itself, the same as the intent to harm." (Italics added.) Stated differently, Insurance Code "section 533 precludes indemnification, whether or not the insured subjectively intended harm, if the insured seeks coverage for an intentional, wrongful act that is inherently and necessarily harmful." (*Shell Oil Co.* v. *Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 740-741 [15 Cal.Rptr.2d 815].)

■ Nor can Barbara prevail by asserting the teacher's conduct was within the course of his educational employment activities and therefore covered under Horace Mann's "California Teacher's Association - National

---

[7] We note even the trial court in the third party action declined to classify Lee's conduct as sexual or nonsexual, describing all of it as "inappropriate," whether "relatively innocuous" or outright felonious.

Moreover, after the trial of Barbara's claims, and particularly in light of her own testimony regarding daily private sexual encounters with Lee, there is no room for legitimate dispute the teacher's hugging, kissing, flirting, teasing, etc., were intended to accomplish his sexual gratification, i.e., there was a "continuous course of seduction culminating in the sexual violation." (*Horace Mann Ins. Co.* v. *Barbara B., supra,* 4 Cal.4th at p. 1090 (dis. opn. of Arabian, J.).)

[8] Indeed, we have little doubt Insurance Code section 533 bars insurance coverage for Lee's intentional sexual harassment, standing alone and without regard to the private sexual molestation. (See *Coit Drapery Cleaners, Inc.* v. *Sequoia Ins. Co., supra,* 14 Cal.App.4th 1595, 1605.)

Education Association - Educator's Employment Liability Policy." ■ It is established "[the] statutory exclusion is read into every insurance contract as an implicit term. [Citation.]" (*Zurich Ins. Co. (U. S. Branch)* v. *Killer Music Inc.* (9th Cir. 1993) 998 F.2d 674, 678, fn. 2, citing *Allstate Ins. Co.* v. *Overton* (1984) 160 Cal.App.3d 843, 849 [206 Cal.Rptr. 823]; see also *Coit Drapery Cleaners, Inc.* v. *Sequoia Ins. Co., supra,* 14 Cal.App.4th at p. 1603.) As a matter of public policy, the statutory prohibition cannot be defeated, regardless of policy language.[9]

## CONCLUSION

In *Horace Mann Ins. Co.* v. *Barbara B., supra,* 4 Cal.4th at page 1086, the Supreme Court stated, "Our decision is no license to 'plead around' *J. C. Penney* . . . . We do not sanction relabelling child molestation as negligence in order to secure insurance coverage for the plaintiff's injuries." As it turns out, that is exactly what happened here. We now have the hindsight of a trial, making it evident the conduct in this case cannot be pigeonholed into separate sexual and nonsexual categories. The judgment is affirmed. Horace Mann shall recover its costs on appeal.

Sills, P. J., concurred.

**CROSBY, J.,** Dissenting.—Hard to believe, but my colleagues were reversed in *Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076 [17 Cal.Rptr.2d 210, 846 P.2d 792], the first appellate incarnation of this case, for the same mistake they repeat today, upholding a trial court failure to recognize the difference between intentional and negligent torts. In *Barbara B.* the court was at pains to point out that distinction; some of the pertinent language appears in the margin.[1]

---

[9]The parties have pointed out two Supreme Court decisions filed during the pendency of this appeal, *Buss* v. *Superior Court* (1997) 16 Cal.4th 35 [65 Cal.Rptr.2d 366, 939 P.2d 766] and *Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645 [42 Cal.Rptr.2d 324, 913 P.2d 878]. We do not find discussion of either case necessary to our disposition.

[1]For example: "The flaw in Horace Mann's reasoning is its unsupported assumption that the other alleged misconduct necessarily was part of the molestation and not in the course of Lee's educational activities. The evidence presented in support of the summary judgment motion fails to clearly establish the inferences necessary to sustain the ruling. Indeed, *the evidence supported the potential for liability apparent on the face of the complaint and, with it, Horace Mann's duty to defend.*" (*Horace Mann Ins. Co.* v. *Barbara B., supra,* 4 Cal.4th at p. 1082, italics added.) "Neither precedent nor logic dictates that a molester cannot also be liable for torts of negligence against the victim which are apart from, and not integral to, the molestation." (*Id.* at p. 1083.) "In many cases the plaintiff's allegations of molestation and other misconduct may be inseparably intertwined (e.g., when the molestation allegedly was carried on in secret, without any distinct injury to the plaintiff's social relations). Lee's nolo

Let us examine the so-called collusive trial before Judge Luesebrink. There, Gary Lee *was* represented by a counsel provided by an insurer, his homeowner's carrier. The judge did not even learn of the parties' stipulation to proceed only on the negligence accusations in the underlying complaint until midtrial. He then expressed reservations concerning the "unrepresented" absentee carrier, it is true. But, in view of the judgment rendered, he must have put those reservations aside—and for good reason.

First, Horace Mann Insurance Company could have been involved, but it decided to gamble on a wrong-headed legal position rather than provide the defense that six justices of the Supreme Court and one from this court found was obviously required after reviewing plaintiff's complaint. Second, the judge may have become aware at some point, as is the nature of these matters in the trial courts, that Lee's defense was underwritten by an insurer, albeit not Horace Mann. He knew Horace Mann was *not* there, but so what. Horace Mann's duty, which it desperately sought to avoid, was to defend its insured, not itself.

Third, and most important, the stipulation was a true two-way street. It seemingly limited the issues to those involving negligence, to the plaintiff's apparent benefit; but the reality is it also permitted a defense based on the theory Commissioner Myers later bought, i.e., that every alleged negligent act was part of an overall scheme to molest Barbara. Thus, although it would ordinarily be contrary to the insured's interest to defend on the basis that his conduct was of a higher degree of culpability than ordinary negligence, and thus beyond the pale for an insurer-provided attorney to so assert, that *was* the defense here.

Lee's counsel found himself in a unique situation. He realized that with no fear of liability of an intentional tort finding (and a virtual certainty that those claims would be procedurally barred forever), he *could and did* marry the carrier's coverage defense to that of its insured: His strategy was to prove a continuing course of intentional criminal conduct and argued to Judge Luesebrink there were no isolated negligent acts for that reason.

Plaintiff's expert and Barbara B. herself based the claimed damages on percentages relative to the intentional and negligent torts. The victim apportioned the sexual and nonsexual emotional distress "50/50."

---

plea to one count of violating Penal Code section 288, subdivision (a), established his sexual molestation of Barbara, but his alleged public embarrassment of Barbara B. affected a different interest." (*Id.* at p. 1085.)

Janet Quillian, a veteran licensed clinical social worker, gave the same apportionment.[2]

The defense, however, was able to "prosecute" the insured for his and the insurer's mutual benefit. Counsel started with an emphasis on the sexual misconduct on cross-examination of Barbara. He continued with the defense expert, Dr. William McAdoo, a forensic and clinical psychologist, who was bluntly asked on direct examination whether the negligent conduct proved by plaintiff "is separate and distinct, in your opinion, from the ultimate touching or sexual touching that has been admitted here in court by Mr. Lee?" McAdoo replied, "No, it is not separate. It is all encompassed in the relationship. It all goes to the psychological state of mind of the person. . . . To separate it is virtually impossible. It would take us back to the mind, body concepts of [Descartes]. We can't make that distinction. They facilitate one another." He was asked the same rephrased question and agreed with counsel's statement that "any nonsexual activity that occurred between the teacher and the student [is] part of the larger picture . . . of sexual activity—" McAdoo's testimony did not go unchallenged on cross-examination, of course.

The defense summation made clear this was the issue Judge Luesebrink was asked to resolve: Was it possible to apportion damages between the negligent and intentional torts on the facts before him?[3] Here is part of the remarkable argument defense counsel made on behalf of his client, Lee:[4] "There is no distinction between sexual and nonsexual activity. It merges together. It's part of a courtship that, unfortunately, took place, and it culminated in felonious activity." He added, "I don't believe there is evidence before the court that the court can take a handle on this and say, well, because Mr. Lee put his arm around Barbara . . . , that is nonsexual; therefore, that is actionable and, therefore, there is a dollar value attached to that."

So there we have the first trial. The result we already know: Judge Luesebrink found the conduct was legally severable; and what's more, he found it was *factually* severable, and awarded damages accordingly. The question before the house, then, is whether this latter finding was binding on

---

[2]Quillian had also read a report by the defense expert, Dr. William McAdoo, in which he found "that Barbara's stress, 25 percent is related to the molestation and 75 percent to other problems."

[3]The judge did not have the benefit of the *Barbara B.* opinion, of course. The Supreme Court's decision appeared almost two years after the trial. We now know it was legally possible to separate the conduct. (See fn. 1, *ante*.)

[4]This may be a new defense in the halls of insurance company-retained defenders: May I be permitted to name it the "plain ol' child molester" ploy.

Horace Mann. There is no reason it should not have been except, arguably, the very broad pronouncement of the Supreme Court in *J. C. Penney Casualty Ins. Co.* v. *M. K.* (1991) 52 Cal.3d 1009, 1018 [278 Cal.Rptr. 64, 804 P.2d 689]. But that language is, I think, broader than the court intended and should be revisited.

No insurer ought be permitted to take advantage of its own error in denying a defense by the simple devices of a reservation of rights letter and prolonged litigation of the issue at the expense of the victim and its own insured. Where a noncollusive trial results in a judgment in negligence, the carrier should be bound just as if it had simply denied coverage and a defense altogether: "As a general matter, a liability insurer is bound by the finding in a tort action against its insured that the insured was liable due to negligence." (*Allstate Ins. Co.* v. *Atwood* (1990) 319 Md. 247, 260 [572 A.2d 154, 160] (citing cases nationwide, including California).)

The *Atwood* court stated the rule I believe should apply: "In our view, the insurer should be able to bring a post-tort trial declaratory judgment action where the conflict of interest situation exists. The trial judge in that declaratory judgment action would first determine, as a legal matter, whether the issue which was resolved in the tort trial and which determines insurance coverage, was fairly litigated . . . . If the declaratory judgment judge decides that the issue was fairly litigated in the tort trial, there should be no relitigation of that issue in the declaratory judgment action. Instead, a final judgment would be entered . . . declaring that the issue was fairly litigated [previously] and that the insurer is bound by the outcome . . . against its insured. On the other hand, if the judge in the declaratory judgment action determines that the issue was not fairly litigated in the tort trial, then the insurer should be permitted to relitigate the matter in the declaratory judgment action." (319 Md. at p. 262 [572 A.2d at p. 161]; *Ford* v. *Providence Washington Ins. Co.* (1957) 151 Cal.App.2d 431 [311 P.2d 930]; 2 Cal. Liability Insurance Practice: Claims and Litigation (Cont.Ed.Bar 1994) § 19.29, pp. 19-22 to 19-24; but see § 19.31, p. 19-25.)

Ironically, the *Atwood* procedure was employed here; but Commissioner Myers found the trial before Judge Luesebrink was not "fairly litigated." Her finding of collusion, however, is simply unsupported by the record, except in the very, very narrow definition she assigned the term: that a person with an interest before the court was not represented, i.e., Horace Mann. That is hardly the usual connotation of collusion, though. Hundreds of cases could be cited for the proposition that where an insurer willfully fails to defend it will be bound by any ensuing judgment. And the issue is a false one anyway to this extent: A carrier must defend its insured to its own detriment, if

necessary, not itself. Collusion for present purposes must be defined to mean that the absent carrier was somehow deceived or denied due process, i.e., that the issue was not "fairly litigated."

This record yields exactly no evidence of that sort of collusion, and Lee's defense counsel's testimony before Commissioner Myers emphatically rejected that accusation by Horace Mann's attorney. The case before Judge Luesebrink was vigorously defended by an attorney who was in the pay of another insurance company. He entered into a clever stipulation to try only the negligence allegations and thereby freed himself to produce expert testimony in support of the very argument Commissioner Myers and my colleagues adopt, i.e., that all Lee's conduct was part and parcel of an ongoing molestation of Barbara. Horace Mann could have done no better had it provided its own defense. Thus, under the rule of the *Atwood* case, it should not have had the opportunity to revisit an issue "fairly litigated."

I would reverse.