[No. D054866. Fourth Dist., Div. One. Mar. 26, 2010.]

LISA RISELY, Plaintiff and Appellant, v.
INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB,
Defendant and Respondent.

200

**COUNSEL**

Bayuk & Associates and Christopher W. Bayuk for Plaintiff and Appellant.

Ford, Walker, Haggerty & Behar, Patrick J. Gibbs and K. Michele Williams for Defendant and Respondent.

**OPINION**

**AARON, J.—**

## I.

## INTRODUCTION

The trial court granted an insurer's motion for summary judgment on the ground that, as a matter of law, the insurer's refusal to defend and indemnify its insured against an injured party's claim of false imprisonment had not caused the insured to suffer any damages. The trial court concluded that the insurer's refusal to defend the claim under a homeowners policy was "of no consequence" to the insured because the insurer provided the insured a defense pursuant to a separate automobile policy.

We conclude that the mere fact that the insurer provided its insured with a defense under one policy does not necessarily insulate the insurer from liability for its alleged breach of the duty to defend and settle under a second policy. In this case, the insurer has not established that its refusal to defend under the homeowners policy was of "no consequence" to the insured, as the trial court found. On the contrary, the insurer's refusal to defend under the homeowners policy potentially increased the insured's exposure to personal liability. The trial court therefore erred in concluding that, as a matter of law, the insured suffered no damages from the insurer's refusal to defend. Accordingly, we reverse the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Risely's complaint*

In May 2008, Lisa Risely filed a three-count third amended complaint against Interinsurance Exchange of the Automobile Club (Auto Club), in which she claimed breach of contract and breach of the covenant of good faith and fair dealing, and sought to recover the proceeds of an insurance policy as a judgment creditor, pursuant to Insurance Code section 11580.[1] The complaint alleged that on or about August 6, 2003, Auto Club's insured,

---

[1] Unless otherwise specified, all subsequent statutory references are to the Insurance Code. Section 11580, subdivision (b) generally provides that all liability insurance policies shall have a provision that states: "[W]henever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property

Sean Turner, offered Risely a ride home in his car. After Risely got into the car, Turner began to drive erratically and negligently. Risely asked Turner to take her home immediately several times, but he refused to do so. Risely also asked Turner to stop driving erratically, but he refused this request, as well. Risely alleged that Turner wrongfully held her against her will, and that she suffered severe, debilitating injuries as a result of his conduct.[2]

Risely also alleged that Turner was insured under two insurance policies issued by Auto Club—an automobile policy with policy limits of $50,000, and a homeowners policy with policy limits of $300,000. Risely further alleged that the homeowners policy provided coverage for personal injury arising from false imprisonment, and that the automobile policy did not provide such coverage. Risely also claimed that the homeowners policy provided that Auto Club would defend any suit seeking covered damages, and that this policy contained an implied covenant that Auto Club would "settle liability matters at or within policy limits."

Risely alleged that in August 2005, she filed a lawsuit against Turner for motor vehicle negligence, negligence per se, and false imprisonment, among other claims. Auto Club provided Turner with counsel to defend the action. In December 2005, Risely offered to settle the action against Turner for $300,000—the policy limits of the homeowners policy. In January 2006, Auto Club, through its coverage counsel, sent a letter to Turner declining to defend or indemnify him under the homeowners policy,[3] and stating that Auto Club would defend all of Risely's claims under Turner's automobile policy, including the false imprisonment claim. Auto Club subsequently declined Risely's $300,000 demand on the ground that the demand was in excess of the policy limits of the automobile policy, and there was no other applicable coverage.

In her complaint against Auto Club, Risely alleged that after Auto Club declined to defend or indemnify Turner under the homeowners policy, Turner agreed to the entry of a stipulated judgment against him in Risely's lawsuit. Turner also agreed to assign to Risely any and all claims that Turner might have against Auto Club for breach of contract and breach of the covenant of good faith and fair dealing, based on Auto Club's refusal to defend or

---

damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." (§ 11580, subd. (b)(2).)

[2] Risely did not expressly allege that she suffered her injuries in an automobile accident. Turner subsequently pled guilty to various criminal charges arising out of the incident, including vehicular manslaughter and reckless driving.

[3] Among other grounds for denying coverage of Risely's false imprisonment claim, counsel stated in the letter that the policy contained an exclusion that precluded coverage for criminal acts committed by the insured.

indemnify Turner under the homeowners policy. In September 2006, pursuant to the stipulation, the trial court entered a final judgment in the amount of $434,000 in Risely's lawsuit against Turner, on her false imprisonment claim.[4] Risely alleged in this lawsuit that Auto Club repeatedly refused her requests to pay the judgment.

In her first cause of action for breach of contract, Risely claimed that Auto Club breached its duty to defend and indemnify Turner against Risely's false imprisonment claim. Risely further alleged that Auto Club breached its duty to accept her reasonable settlement offer, thereby exposing Turner to the possibility that he would incur personal liability, despite the fact that Risely's claim was covered under the homeowners policy. Risely alleged that Auto Club's breaches caused Turner to enter into a stipulated judgment against him for $434,000, and that she was entitled to recover $434,000 from Auto Club, since Turner had assigned to her his breach of contract claim against Auto Club. Risely repeated these allegations in her claim for breach of the covenant of good faith and fair dealing.

In a third cause of action, Risely alleged that upon the entry of judgment in her action against Turner, she became a third party beneficiary of Turner's homeowners policy with Auto Club, pursuant to section 11580. Risely alleged that she was entitled to recover the $300,000 policy limits, as well as punitive damages, pursuant to this claim.

### B. *Auto Club's motion for summary judgment*

Auto Club filed a motion for summary judgment and/or adjudication in which it claimed that Risely could not establish any of her claims because a "judicial determination of liability in the underlying case sufficient to establish damages resulting from a refusal to settle," was an essential element of each of Risely's claims, and there had been no such determination. Auto Club contended that, as a matter of law, the stipulated judgment entered in the underlying action was not binding against it because Auto Club had provided a defense to all of Risely's claims in that action. Auto Club did not dispute that it had refused to defend or indemnify Turner under the homeowners policy, but maintained that it had fulfilled its duty to defend Turner by providing him a defense under the automobile policy.

Auto Club acknowledged that, "[w]here an insurer refuses to defend its insured against a third party claim, the insured may enter a noncollusive

---

[4] The court offset the $450,000 settlement amount by the $16,000 that Auto Club had paid Risely for her portion of the policy benefits under the automobile insurance policy for her negligence-based claims. It is undisputed that Auto Club paid the remainder of the automobile insurance policy benefits to other victims of the accident in which Risely was injured.

settlement with the claimant, without the insurer's consent," and also acknowledged that under those circumstances, the "settlement raises a presumption that the claim was worth the amount paid." However, citing *Hamilton v. Maryland Casualty Co.* (2002) 27 Cal.4th 718 [117 Cal.Rptr.2d 318, 41 P.3d 128] (*Hamilton*), Auto Club argued that "where the insurer provides a defense to the third party claim or action, any settlement between the insured and the claimant, without the insurer's consent, cannot establish the insured's liability or the amount thereof in a subsequent action against the insurer."

Auto Club asserted that it had provided Turner with a "defense to the entire lawsuit, including the false imprisonment cause of action, even though there was no indemnity coverage under the automobile policy for the alleged false imprisonment." Auto Club claimed that Turner had received a "complete defense," and that it did "not matter under which policy Turner was receiving [such] defense." Citing *Ceresino v. Fire Ins. Exchange* (1989) 215 Cal.App.3d 814, 823 [264 Cal.Rptr. 30] (*Ceresino*), Auto Club argued, "Where there is a duty to defend, a failure to defend under one policy is of no consequence where a defense is being provided under another policy." Auto Club maintained that because it had provided Turner with a full defense, Risely could not establish that Turner had been damaged by Auto Club's alleged bad faith refusal to settle Risely's claims, which she would have to do in order to prove both her breach of contract claim and her claim for breach of the covenant of good faith and fair dealing. Thus, Auto Club argued, the stipulated judgment was not binding on it, under *Hamilton, supra,* 27 Cal.4th at page 726.

With respect to Risely's section 11580 claim, Auto Club acknowledged that once a plaintiff has obtained a judgment against an insured defendant, the plaintiff, as a judgment creditor, may seek to enforce the judgment, up to the policy limits, against the insurance company. However, Auto Club claimed that Risely could not enforce the stipulated judgment in light of a provision in the homeowners policy that provided that no action could be brought to recover policy benefits until the insured's obligation to pay had been determined either by a judgment after trial, or by the written consent of both the Auto Club and the insured. Auto Club argued that in cases in which a "defense has been provided," courts have determined that such a "no action" clause precludes recovery based on a stipulated judgment.

In Risely's opposition to Auto Club's motion for summary judgment, Risely argued that under well-established case law, Auto Club had forfeited its right to object to its insured's settlement of the false imprisonment claim when it breached its duty to defend. With respect to her section 11580 claim,

Risely maintained that Auto Club had forfeited its right to assert the "no action" provision of the policy by declining to defend or indemnify Turner under that policy.[5]

Risely distinguished *Hamilton*, and several other similar cases on which Auto Club relied in its motion, noting that in all of those cases, the insurer had fully defended the claim under the policy at risk, and thus, that no breach of the duty to defend was at issue. Risely argued that the present case was distinguishable from the cases that Auto Club cited because Auto Club had breached both its duty to defend *and* its duty to settle under the homeowners policy.

Risely distinguished *Ceresino* on the ground that in that case, there had been a prior judicial determination that the nondefending insurer's policy did not cover the claim, while in this case, there had been no judicial determination that Risely's false imprisonment claim was not covered under the homeowners policy. Risely further noted that the *Ceresino* court had suggested that an insurer *may* be bound by a stipulated judgment for a covered claim where the insurer breaches its duty to defend, notwithstanding the fact that another insurer defended the claim.

Risely contended that the fact that Auto Club had defended Turner against the false imprisonment claim under the automobile policy did not excuse its failure to defend him under the homeowners policy. Noting that the automobile policy had policy limits of $25,000 per person and $50,000 per occurrence, and did not include coverage for false imprisonment, while the homeowners policy had a $300,000 policy limit and provided coverage for false imprisonment, Risely maintained that Auto Club's defense of her false imprisonment claim under the automobile policy was not equivalent to a defense under the homeowners policy because, "[t]he defense provided under the automobile policy exposed [Auto Club] to absolutely no liability for any claim, settlement and/or judgment for the false imprisonment claim, while leaving its insured liable for a covered risk under the homeowner's policy."[6]

---

[5] Risely also claimed, in the alternative, that Auto Club had consented to the stipulated judgment in the underlying action by failing to raise an objection to the judgment despite knowing of its existence.

[6] Risely noted that pursuant to *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494], independent counsel must be appointed where a conflict exists between the insured and the insurance company in that counsel retained for the insurer can control a coverage issue. (See also Civ. Code, § 2860 [codifying and limiting rights under *Cumis*].) Risely claimed that Auto Club would have been required to obtain *Cumis* counsel for Turner if it had defended him under the homeowners policy.

## C. *The trial court's ruling*

After a hearing on Auto Club's motion for summary judgment, the trial court entered an order granting the motion. The court reasoned in part:

"It is undisputed that [Auto Club] provided a defense to its insured without a reservation of rights as to the entire complaint asserted by plaintiff in the underlying action. This included the claim for 'false imprisonment.' It is undisputed that this defense was provided under the automobile policy, but that coverage was denied on the homeowner's policy. Generally, an insured who is abandoned by his or her liability insurer is free to make the best settlement possible with the third party claimant, including a stipulated judgment with a covenant not to execute. [(*Pruyn v. Agricultural Ins. Co.* (1995) 36 Cal.App.4th 500, 515–516 [42 Cal.Rptr.2d 295])]. Provided that such settlement is not unreasonable and is free from fraud or collusion, the insurer will be bound thereby. *Id.* Where the insurer has fulfilled its contractual obligation to provide a defense to the underlying action, a settlement of that action by the insured without the consent of the insurer will have an entirely different consequence. *Id.* Such judgment is insufficient to impose liability on the insurer in a later action against the insurer under section 11580. [(*Pruyn, supra,* 36 Cal.App.4th at pp. 515–516.)]

"This action does not fit the normal 'mold' described in *Pruyn* because the insured was defended under one policy while the defense obligation was rejected on the second policy. However, the logic of the general rule still applies. The insured was not forced to settle because he faced the prospect of financing his own investigation and defense of the underlying lawsuit. See [(*Ceresino, supra,* 215 Cal.App.3d at p. 823)]. The insured did not face this danger because his representation was undertaken under the automobile policy without a reservation of rights. *Id.* The failure to defend under the homeowner's policy 'was of no consequence.' With no risk to the insured, plaintiff could have obtained an adjudicated judgment against the insured and thereafter pursued collection of this judgment as against the insurer pursuant to . . . section 11580, and an assignment of the insured's claim (assuming the denial of coverage under the homeowner's policy was wrongful). As plaintiff failed to pursue this route she cannot demonstrate the element of damages, even assuming coverage should have been afforded under the homeowner's policy. A stipulated judgment in excess of the policy limits, for which the insured is relieved from personal liability by a covenant not to execute, may *not* be deemed even a presumptive determination of the insured's damages in an action against a defending insurer for breach of its duties. [(*Hamilton, supra,* 27 Cal.4th at p. 733.)]"

D. *The judgment and appeal*

The trial court entered judgment in favor of Auto Club. Risely filed a motion for new trial and/or to vacate or set aside the judgment. The trial court denied both motions. Risely timely appeals.

III.

DISCUSSION

*Auto Club was not entitled to summary judgment*[7]

A. *Governing law*

1. *The law governing summary judgment*

A moving party is entitled to summary judgment when the party establishes that it is entitled to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant may make this showing by establishing that the plaintiff cannot establish one or more elements of all of his causes of action, or that the defendant has a complete defense to each cause of action. (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 466 [54 Cal.Rptr.3d 568].)

In reviewing a trial court's ruling on a motion for summary judgment, the reviewing court makes " 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law. [Citations.]' " (*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1143 [29 Cal.Rptr.3d 144], quoting *Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222–223 [38 Cal.Rptr.2d 35].)

2. *The duties that an insurer owes to its insured*

■ A liability insurer has a duty to defend its insured against third party claims that are potentially within the scope of the insured's policy, and also has a duty to defend any noncovered claims that are asserted in the same action. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 46–48 [65 Cal.Rptr.2d

---

[7] In her brief on appeal, Risely claims that the trial court erred in granting Auto Club's motion to strike the punitive damage allegations from her complaint. However, the record demonstrates that the trial court never entered a final order on Auto Club's motion to strike, in light of its order granting Auto Club's motion for summary judgment. Thus, we do not review this claim on appeal.

366, 939 P.2d 766].) In addition, the insurer owes the insured a duty to indemnify claims that are covered by the policy. (*Id.* at pp. 45–46.) From the duties to defend and indemnify, and the covenant of good faith and fair dealing, California courts have derived an implied duty on the part of the insurer to accept a third party's reasonable settlement demand on a covered claim in cases in which the insured is facing potential liability in excess of the policy, and the demand is within policy limits. (*Hamilton, supra,* 27 Cal.4th at p. 724.) The *Hamilton* court described the basis for this implied duty as follows: " '[A]n insurer is required to act in good faith in dealing with its insured. Thus, in deciding whether or not to settle a claim, the insurer must take into account the interests of the insured, and when there is a great risk of recovery beyond the policy limits, a good faith consideration of the insured's interests may require the insurer to settle the claim within the policy limits. An unreasonable refusal to settle may subject the insurer to liability for the entire amount of the judgment rendered against the insured, including any portion in excess of the policy limits.' " (*Id.* at pp. 724–725.)

3. *The insured's remedies in cases in which the insurer breaches its duties to defend and to settle*

■ Where the insurer denies its insured a defense for covered claims, the insured may make a reasonable, noncollusive settlement with the third party, without the insurer's consent. (*Hamilton, supra,* 27 Cal.4th at p. 728.) The insured may assign its claims against the insurer to the third party in exchange for a covenant not to execute on the settlement. (*Ibid.*) The third party may then seek damages from the insurer for breach of duties that the insurer owed to the insured, in a separate action for breach of contract and breach of the covenant of good faith and fair dealing. (*Id.* at pp. 725, 728.) In that action, the reasonable settlement made by the insured constitutes presumptive evidence of the amount of the insured's liability to the third party, as well as the damages that resulted from the insurer's breaches. (*Id.* at p. 728; see also *Pruyn v. Agricultural Ins. Co., supra,* 36 Cal.App.4th at p. 527 ["[A]n insured who has been abandoned by his or her insurer and elects to settle rather than risk an adverse judgment is entitled to an evidentiary presumption, in a subsequent action against the insurer to enforce policy provisions, as to the 'insured's liability on the underlying claim, and the amount of such liability.' [Citation.]"].)

4. *An insurer that has not breached its duty to defend is not bound by a stipulated judgment that insulates the insured from bearing any actual liability*

■ In *Hamilton,* the Supreme Court expressly approved prior cases in which courts had held that, " ' "[w]here the insurer has repudiated its

obligation to defend[,] a defendant in the absence of fraud may, without forfeiture of his right to indemnity, settle with the plaintiff upon the best terms possible, taking a covenant not to execute." ' " (*Hamilton, supra,* 27 Cal.4th at p. 728, quoting *Samson v. Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 240 [178 Cal.Rptr. 343, 636 P.2d 32], quoting *Zander v. Texaco, Inc.* (1968) 259 Cal.App.2d 793, 802 [66 Cal.Rptr. 561].) In contrast, according to the *Hamilton* court, "[A] *defending* insurer cannot be bound to a settlement to which it has not agreed and in which it has not participated . . . ." (*Hamilton, supra,* 27 Cal.4th at p. 722, italics added; see also *Gray v. Begley* (2010) 182 Cal.App.4th 1509 [106 Cal.Rptr.3d 729] [stating that insurer that defends under a reservation of rights is not bound by a settlement reached without its consent].)

*Hamilton* involved an insurer (Maryland) that had issued two successive commercial insurance policies to a company (VLP). Each policy had a $1 million policy limit. (*Hamilton, supra,* 27 Cal.4th at p. 722.) A group of plaintiffs sued VLP, among other defendants. (*Id.* at p. 723.) Maryland accepted defense of the action on behalf of VLP. (*Ibid.*) The plaintiffs offered to settle the suit with VLP for $1 million (*ibid.*), but Maryland refused to settle for this amount. (*Ibid.*) VLP subsequently entered into a settlement with the plaintiffs as part of a global settlement of the case. (*Ibid.*) Pursuant to the settlement, some of the defendants and insurers, not including VLP or Maryland, contributed over $2 million to an initial settlement fund. (*Ibid.*) VLP agreed to have a stipulated judgment entered against it in the amount of $3 million, and to assign to the plaintiffs any breach of contract claim that VLP might have against Maryland. (*Ibid.*) In return, the plaintiffs agreed not to execute the judgment against VLP. (*Ibid.*)

The plaintiffs, as VLP's assignees, filed suit against Maryland, seeking contractual damages from Maryland for its refusal to accept the plaintiffs' settlement offer. (*Hamilton, supra,* 27 Cal.4th at p. 723.) The *Hamilton* court concluded that Maryland was entitled to summary judgment because the plaintiffs could not establish that VLP had been damaged by Maryland's refusal to settle the case. (*Id.* at p. 726.) In reaching this conclusion, the *Hamilton* court reasoned: "[W]here the insurer has accepted defense of the action, no trial has been held to determine the insured's liability, and a covenant not to execute excuses the insured from bearing any actual liability from the stipulated judgment, the entry of a stipulated judgment is insufficient to show, even rebuttably, that the insured has been injured to *any* extent by

the failure to settle, much less in the amount of the stipulated judgment. In these circumstances, the judgment provides no reliable basis to establish damages resulting from a refusal to settle, an essential element of plaintiffs' cause of action." (*Ibid.*)

5. *Section 11580 and the enforceability of "no action" clauses*

■ A "no action" clause generally provides that no action may be brought against an insurer unless an insured's obligation to pay an injured party has been determined by an actual trial, or by the insurer's consent.

■ "Insurance Code section 11580 provides an injured plaintiff with the right to bring a direct action against a defendant's insurer which does not defend its insured once the plaintiff obtains a judgment against the defendant." (*Travelers Casualty & Surety Co. v. Superior Court* (2005) 126 Cal.App.4th 1131, 1141 [24 Cal.Rptr.3d 751].) An insurer that has breached its duty to defend under a policy may be bound by a stipulated judgment agreed to by its insured without its consent, notwithstanding a "no action" clause in the policy. (*Diamond Heights Homeowners Assn. v. National American Ins. Co.* (1991) 227 Cal.App.3d 563, 581 [277 Cal.Rptr. 906] (*Diamond Heights*); *Sanchez v. Truck Ins. Exchange* (1994) 21 Cal.App.4th 1778, 1783 [26 Cal.Rptr.2d 812].) "The insurer is deemed to have waived its rights under the ' "no action" ' clause by such conduct constituting a breach of its obligations under the policy." (*Diamond Heights, supra*, 227 Cal.App.3d at p. 581.)

6. *Cases in which multiple insurers owe a duty to defend*

■ Where more than one insurer has a duty to defend an insured, each insurer's duty is "separate and independent from the others . . . ." (*Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 70 [70 Cal.Rptr.2d 118, 948 P.2d 909], italics omitted.) However, "[a]n insured is entitled to only one full defense." (*Safeco Ins. Co. of America v. Parks* (2009) 170 Cal.App.4th 992, 1004 [88 Cal.Rptr.3d 730] (*Safeco*).) An insurer that has allegedly breached its duty to defend may demonstrate that its insured suffered no damages from its alleged breach by demonstrating that its insured received a full and complete defense, notwithstanding its breach. (See *Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1094 [31 Cal.Rptr.3d 43] (*Emerald Bay*); *Horace Mann Ins. Co. v. Barbara B.* (1998) 61 Cal.App.4th 158, 164 [71 Cal.Rptr.2d 350];

*Ceresino, supra,* 215 Cal.App.3d at p. 823.) However, in cases in which the nondefending insurer's failure to provide a defense potentially increased the insured's exposure to personal liability, the insured may demonstrate damages from an alleged breach of the duty to defend, notwithstanding that another insurer assumed the costs of providing a defense. (See *Wint v. Fidelity & Casualty Co.* (1973) 9 Cal.3d 257, 263 [107 Cal.Rptr. 175, 507 P.2d 1383] (*Wint*); *Safeco, supra,* 170 Cal.App.4th at p. 1004.)

In *Wint, supra,* 9 Cal.3d at page 261, several injured plaintiffs brought claims against an insured (McGregor). McGregor requested a defense of the action from three different insurers, including Great American and Fidelity. The Fidelity policy had a $100,000 limit, while the Great American policy had a $10,000 limit. (*Id.* at pp. 260–261.) Great American agreed to provide a defense to McGregor, but Fidelity and the third insurer refused to defend. (*Id.* at p. 261.) The trial court eventually entered an $80,000 stipulated judgment against McGregor. (*Ibid.*) As part of the judgment, McGregor assigned to the plaintiffs all claims that he might have against Fidelity, and the injured plaintiffs agreed not to seek to recover the judgment from McGregor. (*Ibid.*) Great American paid its $10,000 portion of the $80,000 judgment. (*Ibid.*) The plaintiffs, as assignees, then instituted an action against Fidelity and the third insurer, seeking to recover the $70,000 balance. (*Ibid.*) The trial court entered a judgment in favor of the nondefending insurers and the injured plaintiffs appealed. (*Ibid.*)

In reversing the judgment in favor of Fidelity, the *Wint* court concluded that Fidelity could be liable for its share of a stipulated judgment, notwithstanding that Great American had provided the insured a defense in the action. The *Wint* court stated, "[W]here more than one insurer owes a duty to defend, a defense by one constitutes no excuse of the failure of any other insurer to perform." (*Wint, supra,* 9 Cal.3d at p. 263.) The *Wint* court explained that, an "insurer is liable for all damages reasonably incurred by the insured in the event of a failure to defend" (*id.* at p. 261), and noted that the plaintiffs could demonstrate that the insured had incurred such damages in that case. The *Wint* court reasoned, "[A] defense by an insurer whose policy has a limit far below the amount claimed cannot be equated to the defense of an insurer who stands to lose 10 times as much as the insurer who defends." (*Id.* at p. 263.) The *Wint* court concluded, "Since . . . there was potential liability under the policy and Fidelity's refusal to defend was unjustified, Fidelity is liable for its proportionate share of the judgment [citations], subject, however, to its right to litigate on remand the remaining issue raised by the pleadings as to whether the settlement was collusive or fraudulent." (*Ibid.*)

In *Safeco, supra*, 170 Cal.App.4th at page 1005, the court concluded that the trial court had not erred in denying an insurer's motion for summary adjudication on the ground that its insured had not been damaged by its failure to defend a claim, because another insurer had provided a defense. The *Safeco* court observed that an insured may be damaged by a failure to defend in a case in which the "insurer that accepts the defense has a policy limit far below the amount claimed, and far lower than that of the insurer that declines the defense." (*Ibid.*) The *Safeco* court concluded that the trial court had properly denied the insurer's motion for summary adjudication, reasoning: "Here the limit of liability on the [insured's homeowners] policy was $100,000. The limit of liability on the automobile policy was $30,000, split among [the insured] and her two codefendants. The codefendants settled for amounts within the policy limits. [The insured], on the other hand, suffered an arbitration award and subsequent judgment of over $2 million. Safeco [(the issuer of the homeowners policy)] now contends the judgment may have been collusive, an issue that would not arise had Safeco furnished [the insured] a defense. Given these facts, the trial court correctly denied summary adjudication." (*Ibid.*)

■ In *Emerald Bay*, the court concluded, "[W]here one insurer fully protects the insured by providing a defense and full coverage for a claim, a second insurer's refusal to defend generally cannot support a tort action for breach of the covenant of good faith and fair dealing because the latter's conduct will not enhance the insured's cost of defending itself or its exposure to liability." (*Emerald Bay, supra*, 130 Cal.App.4th at p. 1093.) In affirming a judgment in favor of the defendant insurer, the *Emerald Bay* court asserted, "[T]he record establishes plaintiff was fully protected from both the expense of litigation *and the exposure to liability in th*[*e*] [*underlying*] *lawsuit.*" (*Id.* at p. 1094, italics added; accord, *Horace Mann Ins. Co. v. Barbara B., supra*, 61 Cal.App.4th at p. 164 [affirming judgment for insurer on claim that insurer breached its duty to defend insured in tort action where "trial court aptly noted [insurer's] failure to defend did not harm [insured], who in any event had no financial stake in the outcome" in that action]; *Ringler Associates Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165, 1188 [96 Cal.Rptr.2d 136] (*Ringler*) [concluding insured could not establish damages from insurers' alleged breach of duties to defend where insured "was adequately protected by other insurers, and [insurers'] withdrawal from [insured's] defense did not enhance its defense liability or increase the costs it incurred in defense of the underlying lawsuits"].)

In *Ceresino, supra*, 215 Cal.App.3d at page 818, an insured (Ceresino) sued one of his insurers (Farmers) claiming that Farmers had wrongfully

failed to defend and indemnify Ceresino in a tort suit brought by an injured party (McCulloch). A second insurer (Commercial Union) had provided Ceresino a defense in the tort suit, which was ultimately resolved by way of a stipulated judgment in favor of McCulloch. (*Id.* at p. 817.) In a separate declaratory relief action, the trial court determined that Farmers had no duty to indemnify Ceresino in the McCulloch tort suit. (*Id.* at pp. 822–823.) In Ceresino's suit against Farmers, the trial court rejected Ceresino's claim that Farmers was bound by the stipulated judgment entered in the underlying tort action, and entered a judgment in favor of Farmers.[8] (215 Cal.App.3d at p. 819.)

On appeal, Ceresino claimed that the trial court had erred in concluding that Farmers was not bound by the stipulated judgment in the McCulloch tort suit. The *Ceresino* court rejected this claim. The court first noted, "[T]he stipulation in the third party McCulloch/Ceresino action might bind Farmers for failure to defend *if* there is coverage." (*Ceresino, supra,* 215 Cal.App.3d at p. 822.) However, the court concluded that Ceresino was bound by the trial court's determination in the declaratory relief action that Farmers had no duty to indemnify Ceresino in the McCulloch tort suit. (*Ibid.*) With respect to damages potentially flowing from Farmers's alleged breach of the duty to defend, the court stated, "Farmers' failure to *defend* was of no consequence except to Commercial Union, which requested Farmers pay for half of the defense. . . ." (*Id.* at p. 823.) The *Ceresino* court concluded that the trial court had properly granted judgment in favor of Farmers.

## B. *Application*

Risely claims that the trial court erred in granting Auto Club's motion for summary judgment on the basis of the Supreme Court's reasoning in *Hamilton*. Citing *Wint*, Risely claims that Auto Club's defense of Turner under the automobile policy did not excuse its refusal to defend him under the homeowners policy, and that trial court erred in concluding that, as a matter of law, Auto Club could not be bound by the stipulated judgment. We agree.[9]

The *Hamilton* court recognized and endorsed prior case law in which courts had determined that a stipulated judgment entered after an insurer

---

[8] The trial court entered the judgment pursuant to a stipulation between Ceresino and Farmers so as to facilitate the review of the court's ruling. (*Ceresino, supra,* 215 Cal.App.3d at p. 819.)

[9] In light of our conclusion, we need not consider Risely's contention that the judgment should be reversed on the ground that Auto Club's conduct in the underlying action manifested an intent to ratify the stipulated judgment.

breached its duty to defend was enforceable. (*Hamilton, supra,* 27 Cal.4th at p. 728.) In this case, Risely alleged that Auto Club breached its duty, under the homeowners policy, to defend Turner against Risely's false imprisonment claim. In its motion for summary judgment, Auto Club did not attempt to establish that it had not breached its duty to defend.[10] Risely's claim is thus fully consistent with *Hamilton* in this regard.

Auto Club contends that Turner could not have suffered any damages, as a matter of law, from Auto Club's alleged breach of its duty to defend because Auto Club provided Turner a defense under a separate policy. However, the situation in this case differs from that in *Hamilton* because in *Hamilton,* the insurer *accepted* its defense obligations under *all* relevant policies. (*Hamilton, supra,* 27 Cal.4th at pp. 722–723.) The *Hamilton* court thus did not have occasion to consider the issue in this case, i.e., whether an insured can establish damages stemming from an insurer's breach of its duty to defend where the insured is owed a duty to defend under more than one policy. *Hamilton* is not therefore controlling on this issue.

Auto Club contends that it is a "defending insurer" under *Hamilton, supra,* 27 Cal.4th at page 722, because it defended Turner under the automobile policy. In making this assertion, Auto Club fails to acknowledge that a defense under one insurance policy does not constitute a defense under a different insurance policy. Each separate insurance policy carries with it a duty to defend. Here, it is undisputed that Auto Club not only denied coverage under the homeowners policy, but also declined to *defend* Turner under that policy.

Citing *Ceresino, supra,* 215 Cal.App.3d at page 823, Auto Club also contends that, "Where there is a duty to defend, a failure to defend under one policy is of no consequence where a defense is being provided under another policy." *Ceresino* does not stand for this broad proposition. On the contrary, the *Ceresino* court acknowledged that a stipulated judgment may in fact bind an insurer that has breached its duty to defend covered claims. (*Id.* at p. 822.) However, the *Ceresino* court concluded that the insured in that case could not establish damages by way of a stipulated judgment, in part because the nondefending insurer had previously obtained a ruling that the claims at issue were not covered under the policy in question. (*Id.* at pp. 822–823.) In this case, in contrast, there has been no determination that Risely's false imprisonment claim is not covered under the homeowners policy.

---

[10] Auto Club acknowledges that it is undisputed both that it refused to defend Turner under the homeowners policy, and that it denied Risely's $300,000 policy limits settlement demand under the homeowners policy.

 Contrary to Auto Club's suggestion that an insured suffers no damages from an insurer's breach of the duty to defend whenever the insured receives a defense under any policy, courts have held that an insured may be able to establish damages stemming from an insurer's alleged breach of the duty to defend, notwithstanding that another insurer provided a defense. (E.g., *Wint, supra*, 9 Cal.3d at p. 263.) Further, it is clear that the mere fact that an insured did not incur defense costs does not necessarily demonstrate that the insured was not damaged. (See *Ringler, supra*, 80 Cal.App.4th at p. 1187 [although "basic measure of damages" for breach of duty to defend is costs incurred in defending suit, there are "[e]xceptions to this rule—as where the *insured suffers liability in excess of the policy limits*" (italics added)].) As the *Ringler* court suggested, one of the primary considerations in determining whether the insured received a full and complete defense, notwithstanding the insurer's breach, is whether the breach exposed the insured to additional potential liability.

The *Emerald Bay* court rejected an insured's claim that it had been harmed by the insurer's alleged breach of its duty to defend *because* "the record establishes plaintiff was fully protected from both the expense of litigation *and the exposure to liability* . . . ." (*Emerald Bay, supra*, 130 Cal.App.4th at p. 1094, italics added.) Similarly, in *Horace Mann Ins. Co. v. Barbara B., supra*, 61 Cal.App.4th at page 164, the court observed that, notwithstanding the insurer's alleged breach of the duty to defend, the insured "had *no financial stake* in the outcome." (Italics added.) In *Donahue Constr. Co. v. Transport Indem. Co.* (1970) 7 Cal.App.3d 291, 304 [86 Cal.Rptr. 632], the court rejected the claim that an insured could establish damages stemming from an insurer's breach of duty to defend, reasoning, "Since [insured] was adequately protected under the [defending insurer's] policy, the refusal by [nondefending insurer] to defend [insured] *did not enhance [insured's] liability or exposure to liability*." (Italics added.) The holdings in these cases are fully consistent with the rationale for permitting an insured to enter into a settlement that may bind the insurer without the insurer's consent upon an insurer's breach of the duty to defend—i.e., to allow the insured to minimize the insured's potential exposure to liability. (*Pruyn v. Agricultural Ins. Co., supra*, 36 Cal.App.4th at p. 527.)

 In cases in which the insured faces potential liability beyond the policy limits of the defending insurer's policy, courts have concluded that an insured can demonstrate that he has suffered damages from an insurer's breach of the duty to defend, apart from defense costs, in the form of exposure to personal liability. (*Wint, supra*, 9 Cal.3d at p. 263; *Safeco, supra*,

170 Cal.App.4th at p. 1005.) Further, in *Wint*, the Supreme Court held that a nondefending insurer could be bound by a stipulated judgment that its insured entered into after the insurer breached its duty to defend, notwithstanding that another insurer had provided a defense to the action. (*Wint, supra,* 9 Cal.3d at p. 263.)

We reject Auto Club's argument that the *Wint* court's statement "regarding the inequality of a defense provided under a policy with a lower limit" is not authority for that proposition. Auto Club claims that this statement was "pure dictum," and that it was "overridden" by *Hamilton.* On the contrary, in our view, this statement forms the basis of the *Wint* court's holding, and, as discussed previously, the *Hamilton* court did not consider this issue. (See also *Safeco, supra,* 170 Cal.App.4th at p. 1005 [relying on this aspect of *Wint* in a case decided after *Hamilton*].) Auto Club offers no reasonable basis for distinguishing *Wint,* nor does it offer any rationale for extending *Hamilton* to a scenario that was not contemplated by that court.

As noted above, Auto Club maintains that its alleged wrongful refusal to defend Turner against Risely's false imprisonment claim under Turner's homeowners policy was "of no consequence." Specifically, Auto Club contends that because it provided a "full and complete defense" to the claim under the automobile policy, Turner was not damaged by its refusal to defend under the homeowners policy.[11]

Although there appears to be no prior case in which a court has considered whether an insured may establish damages based on an insurer's alleged breach of its duty to defend where a single insurer is alleged to owe a duty to defend under more than one policy, Auto Club offers no reason why the law should differ depending on whether the policies in question are issued by a single insurer, or instead, by multiple insurers. If, in this case, Auto Club had issued only the homeowners policy and refused to defend, and a different insurer had issued the automobile policy and defended, Auto Club would not be in a position to argue, as it does here, that its refusal to defend under the homeowners policy was, as a matter of law, "of no consequence" to the insured. Rather, under that scenario, Auto Club would be in the same position as the nondefending insurer was in *Wint,* in which the court unequivocally rejected Fidelity's argument that a defense by Great American, an insurer whose policy had a limit below the amount claimed, was equivalent to a defense by Fidelity, whose policy limit was 10 times higher than the Great American policy limit.

---

[11] Auto Club has not attempted to demonstrate that it did not breach its duty to defend under the homeowners policy on the ground that there was no possibility for coverage under that policy.

██ Since there has been no judicial determination in this case as to whether the homeowners policy provided indemnity coverage for Risely's false imprisonment claim, it is clear that Auto Club has not established as a matter of law that Turner was not damaged by its failure to provide a defense under that policy. To the extent that the homeowners policy provided indemnity coverage for Risely's false imprisonment claim, Auto Club's alleged wrongful failure to defend under that policy denied Turner his right to have Auto Club accept a reasonable settlement demand of the claim within the policy limits of the homeowners policy.[12] (See *Hamilton, supra,* 27 Cal.4th at p. 724 ["From the covenant of good faith and fair dealing implied by law in all contracts, and from the liability insurer's duty to defend and indemnify covered claims, California courts have derived an implied duty on the part of the insurer to accept reasonable settlement demands on such claims within the policy limits."].) Assuming that the homeowners policy *does* provide indemnity coverage for Risely's false imprisonment claim, it is clear that Auto Club's refusal to defend Turner under the homeowners policy, and its choice to defend him under only the automobile policy—which provided no coverage for Risely's claim—would have exposed Turner to a greater potential for personal liability. Auto Club thus has not established that Turner was not damaged by its failure to provide a defense under the homeowners policy.

We need not decide in this appeal the more difficult question of whether Risely can establish that Turner suffered damages from Auto Club's alleged breach of the duty to defend even if the homeowners policy does *not* provide indemnity coverage for Risely's false imprisonment claim. Since the basis of the trial court's grant of summary judgment was its determination that, as a matter of law, Risely cannot establish damages, our conclusion that Auto Club has not in fact made that showing, requires reversal. (Code Civ. Proc., § 437c, subd. (p)(2) [defendant meets its "burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established"].)

Finally, Auto Club claims that "[Risely's] [j]udgment creditor cause of action is precluded for the same reasons." However, because Auto Club has not established that its alleged breach of its duty to defend Turner under the homeowners policy was excused by the fact that it provided him a defense under the automobile policy, Auto Club has not established that it cannot be bound by the stipulated judgment based on the "no action" clause in that policy. (See, e.g., *Diamond Heights, supra,* 227 Cal.App.3d at p. 581 [insurer that breaches duty to defend may be bound by stipulated judgment notwithstanding no action clause].)

---

[12] We emphasize that there has been no judicial determination in this case as to whether Auto Club breached its duty to defend under the homeowners policy, or whether Risely's settlement demand was in fact reasonable.

## IV.

## DISPOSITION

The judgment is reversed. Risely is entitled to costs on appeal.

McConnell, P. J., and McIntyre, J., concurred.

A petition for a rehearing was denied April 14, 2010, and respondent's petition for review by the Supreme Court was denied June 9, 2010, S182429.